RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2001 FED App. 0224P (6th Cir.)
File Name: 01a0224p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
　　　　*Plaintiff-Appellee,*

　　　　*v.*

No. 99-5706

DAVID STAFFORD,
　　　　*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 98-00099—Edward H. Johnstone, District Judge.

Argued: December 1, 2000

Decided and Filed: July 17, 2001

Before: NORRIS and CLAY, Circuit Judges; ROSEN,[*]
District Judge.

———————————

## COUNSEL

**ARGUED:** John H. Forg III, FORG & FORG, Cincinnati, Ohio, for Appellant. Marisa J. Ford, ASSISTANT UNITED STATES ATTORNEY, Louisville, Kentucky, for Appellee.

_____

[*] The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

**ON BRIEF:** John H. Forg III, FORG & FORG, Cincinnati, Ohio, for Appellant. Marisa J. Ford, Terry M. Cushing, ASSISTANT UNITED STATES ATTORNEY, Louisville, Kentucky, for Appellee.

ROSEN, D. J., delivered the opinion of the court, in which NORRIS, J., joined. CLAY, J. (pp. 23-31), delivered a separate concurring opinion.

----

## OPINION

----

ROSEN, District Judge. Defendant/Appellant David Stafford appeals his 188-month sentence for possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), arguing that this sentence erroneously reflects an enhancement for "crack" cocaine. Yet, the substance in question was expressly and consistently referred to as crack cocaine both at the plea hearing and in the presentence investigation report, and Defendant never once challenged this characterization throughout the course of the proceedings in the court below. Accordingly, finding no basis to relieve Defendant of the consequences of his guilty plea, we affirm.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

### A. The Incident Leading to Defendant's Indictment

An account of Defendant/Appellant David Stafford's arrest is set forth in his Presentence Investigation Report, and this same account is incorporated without objection into Defendant's brief on appeal. On March 24, 1998, at around 1:45 p.m., the Louisville police observed a motor vehicle traveling in excess of 60 miles per hour in a 35-mile-per-hour zone. The vehicle was being driven by Lois Dorsey, and Defendant was riding in the front passenger seat. As officers stopped the vehicle to investigate a traffic violation, Defendant exited the car with a white bag in his hand, and attempted to flee the scene on foot. During the ensuing chase,

indictment and proven beyond a reasonable doubt. *Strayhorn*, 250 F.3d at 467-68. As a corollary, I would not find that recitation of a sentencing range for murder in a plea agreement or at a plea hearing empowers a court to sentence for murder where defendant was only charged with, and expressly pleaded to, manslaughter. I would find error in this case and affirm only under *Pease*.

majority.[9] The Third Circuit has also highlighted the need to include "crack" in the indictment for enhancement purposes: "[T]he problem [for the government in proving crack] arises because the indictment, the defendant, and the court at the plea colloquy speak in terms of cocaine base [rather than crack]."). *United States v. James*, 78 F.3d 851, 856 (3d Cir. 1996). The indictment in *United States v. Washington* 115 F.3d 1008, 1009 (D.C. Cir. 1997), a case relied on by the majority, included specific quantities of cocaine base, as well as reference to the applicable sentencing provisions under §§ 841(b)(1)(A) and (B).

*Pruitt*, *Williams*, and *Washington* are distinguishable because the indictments in those cases included drug quantities and/or types. I would affirm only under *Pease*, which cannot be distinguished by reference to the deficient indictment in this case, and which, unlike *Duarte*, did not base its substantial rights analysis on "overwhelming" proof of drug quantity. Thus, under *Pease*, the *Apprendi* error in this case, that defendant was sentenced under § 841(b)(1)(A) even though crack had not been proven beyond a reasonable doubt, nevertheless did not affect substantial rights.

I also depart from the majority's position that failure to include crack in the indictment or plea agreement may be cured if otherwise inapplicable sentencing ranges are provided in the plea agreement and at the plea hearing. "'The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge.'" *Russell v. United States*, 369 U.S. 749, 771 (1962) (quoting *Stirone v. United States*, 361 U.S. 212, 218 (1960)). Drug quantity is an element of a § 841(b)(1)(A) offense which must be included in the

---

[9] *Williams* relied on an unpublished case involving nearly identical facts, *United States v. West*, No. 96-3595, 1997 WL 640133 (6th Cir. Oct. 15, 1997), which relied primarily on the inclusion of "crack" in the indictment, with only supplemental reference to the inclusion of "crack" in the uncontested presentence report.

the officers observed Defendant throwing the bag away. Defendant was apprehended, and the bag was recovered. As discussed below, a laboratory analysis determined that the bag contained 235.42 grams of "cocaine freebase" and 14.48 grams of powder cocaine. (*See* Presentence Investigation Report at ¶ 5, J.A. at 41.)

## B.   Procedural Background

On August 3, 1998, Defendant was charged in a one-count indictment with possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). The indictment did not specify drug quantities, nor did it refer to any of the penalty provisions set forth at 21 U.S.C. § 841(b)(1).[1]

Defendant was arraigned on December 30, 1998, and entered a guilty plea on March 8, 1999. In his plea agreement, Defendant acknowledged that he was charged with a violation of 21 U.S.C. § 841(a)(1), that he fully understood the nature and elements of the charged offense, and that this charge carried a "minimum term of imprisonment of 10 years, [and] a maximum term of life imprisonment." (Plea Agreement at 1, J.A. at 9.) The plea agreement further stated that, at the time of sentencing, the Government would "recommend a sentence of imprisonment at the lowest end of the applicable [Sentencing] Guideline Range, but not less than any mandatory minimum term of imprisonment required by law," and that the Government would stipulate to the quantity of drugs involved as being "235.42 grams cocaine-base and 14.48 grams powder cocaine." (*Id.* at 3-4, J.A. at 11-12.)

At the March 8, 1999 change-of-plea hearing before District Judge Edward H. Johnstone, Assistant U.S. Attorney Monica Wheatley summarized the plea agreement as follows:

---

[1] At oral argument, the Government's counsel stated that a penalty page was attached to the indictment, specifying a sentencing range of 10 years to life imprisonment. Counsel conceded, however, that this penalty page is not a part of the record before us.

In exchange for Mr. Stafford's plea of guilty to the one-count indictment, which does charge an 841(a)(1) possession with intent to distribute count, the United States will be recommending the low end of the appropriate guideline range but not less than any mandatory minimum recommending three levels off for acceptance of responsibility, stipulating the quantity of drugs in this case is 235.42 grams of cocaine base, also known as crack, and 14.48 grams of cocaine powder . . . .

(Plea Hearing Tr. at 2-3, J.A. at 27-28.)   Both AUSA Wheatley and Defendant's counsel, Jamie Haworth, confirmed that the plea agreement specified a minimum term of imprisonment of ten years, (*id.* at 3, J.A. at 28), and Defendant himself stated at two different points that he understood this, (*id.* at 4, 5, J.A. at 29, 30).   The District Judge also informed Defendant that he faced a maximum term of life imprisonment. (*Id.* at 4, J.A. at 29.) Neither Defendant nor his counsel raised any objection to the Government's characterization of the terms of the plea agreement.

When questioned as to the factual basis for his guilty plea, Defendant testified:

I was stopped by Louisville police.  And when they stopped me, I had eight-and-a-half ounces of cocaine base and [a] half-ounce of powder cocaine in my possession.  I was subdued by police and arrested.

(*Id.* at 5, J.A. at 30.)  The Government's counsel then stated that, "[h]ad the matter proceeded to trial, the officers would have testified . . . about the cocaine being seized from Mr. Stafford as well as lab evidence to confirm the drugs are of the quantity and type that are stipulated in the plea agreement."  (*Id.* at 6, J.A. at 31.)  Following all this, Defendant pled guilty, the District Court accepted this plea.

In advance of Defendant's sentencing, U.S. Probation Officer Kathryn B. Jarvis prepared and filed a Presentence Investigation Report ("PSIR").  As part of her discussion of the relevant offense conduct, Probation Officer Jarvis

error in this case, "plain or otherwise."[7]  However, I join the majority's ultimate finding that because defendant's sentence did not exceed the statutory maximum for the quantity of cocaine to which he clearly stipulated, the sentence did not affect substantial rights under *Pease*.[8]

Defendant's plain error claim, however, extends beyond *Apprendi*.  Defendant argues generally that the government failed to meet its burden to show, even by a mere preponderance of the evidence, that the form of cocaine involved was crack.  When considering this claim, we should again hesitate to apply precedent, as noted above when considering *Pruitt*, which did not involve government failure to include drug quantity or type in the indictment.

Courts regularly look to the indictment when considering whether the government has met its burden to prove that the form of cocaine involved was crack.  In particular, this Court, in *United States v. Williams*, 176 F.3d 301, 309 (6th Cir. 1999), found that the district court did not commit plain error when enhancing a sentence for crack where "crack" had been included in the indictment, used at the plea hearing, and included in the uncontested facts of the presentence report.  Thus, the only relevant distinction between this case and *Williams* is that "crack", indeed "cocaine base", was not mentioned in the indictment.  Nevertheless, the question of whether including "crack" in the indictment was essential to the holding of *Williams* does not seem to concern the

---

[7]To clarify, whether or not *Apprendi* requires drug amounts to be included in an indictment to expose a defendant to a higher sentencing range under § 841(b), an indictment that charges only cocaine casts doubt on defendant's subsequent "express admission" of possessing crack under *Pruitt* and *Nesbitt*.

[8]As discussed by the majority, defendant clearly stipulated to possessing over 249.90 grams of cocaine, some of which may have been crack.  Defendant's sentence of 188 months of imprisonment does not exceed the statutory maximum of twenty years of imprisonment under § 841(b)(1)(C), applicable to cocaine amounts under 500 grams.

plain, may nevertheless be found under *Strayhorn*, *Ramirez*, and *Flowal*, as noted above.  Accordingly, I depart from the majority's conclusion that the district court committed no

---

the quantity of drugs for which it seeks to hold the defendant responsible under 21 U.S.C. § 841(a)[,]" *Strayhorn*,  250 F.3d at 467-68 (citing *Ramirez*, 242 F.3d 351; *Flowal*, 234 F.3d at 938).  Specifically, drug weight is an element of a § 841(b)(1)(A) offense.  *See Strayhorn*, 250 F.3d at 468.  Under *Strayhorn*, I would find error where a defendant, whose indictment did not include drug quantity, was sentenced under § 841(b)(1)(A).

Indeed, the position that *Strayhorn* left the indictment issue for another day departs from my understanding of *stare decisis*.  The relevant indictment language in *Strayhorn*, quoted above, is undeniably direct.  Moreover, language in *Harper*, *Ramirez*, and *Flowal* clearly anticipated *Strayhorn*:  *See Harper*, 246 F.3d at 530 ("[defendant's] *Apprendi* argument clearly would have merit if the indictment failed to charge him with conspiracy to distribute a specific quantity of drugs[,]"); *Ramirez*, 242 F.3d at 352 ("Because in this case the government did not charge [in the indictment] or attempt to prove to the jury a quantity of drugs that would permit a mandatory sentence, we remand[,]"); *Flowal*, 234 F.3d at 936 (noting that the Supreme Court, in *Jones*, 526 U.S. at 243 n.6, "announce[d] the principle that became law in *Apprendi*: 'any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.'").

In support of its position that *Strayhorn* did not squarely address the indictment issue, the majority cites a string of cases that preceded *Strayhorn*, claiming that the cases are "irreconcilable" with the position that *Strayhorn* answered the indictment question.  This reasoning, of course, would render any decision that included the indictment within *Apprendi* requirements irreconcilable with earlier precedent, and predetermines the answer to a question that the majority purports to save for another day.  The one case subsequent to *Strayhorn*, *Garcia*, denied defendant's claim regarding an indictment's failure to include drug quantity without, remarkably, citing *Strayhorn*.  However, the *Garcia* decision was reached only "[t]o the extent we understand [the indictment] claim," and ultimately on plain error grounds that a deficient indictment would not have affected substantial rights. *Garcia*, __F.3d__, 2001 WL 617832, at *6.  My concurrence in this case implies that I would also not find that an indictment's failure to include drug quantity affected substantial rights on plain error review.

recounted the results of a laboratory analysis of the white bag discarded by Defendant shortly before his arrest.  As noted earlier, this analysis revealed that "the bag contained approximately 235.42 grams of cocaine freebase and 14.48 grams of powder cocaine." (*See* PSIR at 1, J.A. at 41.)  Based on this offense conduct, the Probation Officer determined that Defendant's base offense level under the U.S. Sentencing Guidelines was 34, with a three-point reduction to 31 for acceptance of responsibility.  (*See id.* at 2-3, J.A. at 42-43.)  The PSIR explained the basis for this computation:

> The guideline for a violation of 21 USC 841(a)(1) is found in Section 2D1.1 and directs that the offense level be determined by utilizing the Drug Quantity Table set forth in Subsection (c).  As this case involves both powder cocaine and crack cocaine, each shall be converted to its marijuana equivalent to obtain a single offense level.  The 235.42 grams of cocaine base ("crack") have a marijuana equivalency of 4,708.4 kilograms.  The 14.48 grams of powder cocaine have a marijuana equivalency of 2,896 grams (2.896 kilograms of marijuana).  Therefore, the total quantity (marijuana equivalent) would be 4,711.296 kilograms of marijuana.  Section 2D1.1(c)(3) directs that for cases involving at least 3,000 kilograms but less than 10,000 kilograms of marijuana, the base offense level shall be 34.

(*Id.* at 2, J.A. at 42.)

The Probation Officer next found that Defendant's lengthy record of prior arrests and convictions placed him in criminal history category VI.  (*See id.* at 3-15, J.A. at 43-55.)  These determinations of Defendant's offense level and criminal history resulted in a Guidelines sentencing range of 188 to 235 months of imprisonment.  (*See id.* at 18, J.A. at 58.)  Probation Officer Jarvis also cited the statutory penalty provision at 21 U.S.C. § 841(b)(1)(A), and observed that it called for a "term of imprisonment [of] not less than ten years and up to life."  (*Id.* at 18, J.A. at 58.)

Defendant appeared for sentencing on April 21, 1999. Neither AUSA Wheatley nor Defendant's counsel stated any objections to the PSIR, (*see* Sentencing Hearing Tr. at 2-3, J.A. at 34-35), and no objections were filed on Defendant's behalf. Accordingly, the District Court adopted the uncontested factual findings and Guideline calculations set forth in the PSIR, and sentenced Defendant to 188 months of imprisonment, the low end of the sentencing range. (*See id.* at 3, J.A. at 35.) Defendant now appeals this sentence, arguing that it lacks a sufficient basis in fact.

## II. *ANALYSIS*

### A. The Standards Governing This Appeal

The sole issue before us is whether the District Court properly sentenced Defendant under the Sentencing Guideline provision governing crack cocaine, or whether, as Defendant contends, the Government failed to show that the "cocaine base" attributed to him in this case was, in fact, crack cocaine. As the above procedural recitation makes clear, Defendant never contested this drug type determination in the court below. Consequently, we review the District Court's sentencing decision for plain error only. *See United States v. Owusu*, 199 F.3d 329, 339 (6th Cir. 2000). This analysis has four components:

> First, we are to consider whether an error occurred in the district court. Absent any error, our inquiry is at an end. However, if an error occurred, we then consider if the error was plain. If it is, then we proceed to inquire whether the plain error affects substantial rights. Finally, even if all three factors exist, we must then consider whether to exercise our discretionary power under [Fed. R. Crim. P.] 52(b), or in other words, we must decide whether the plain error affecting substantial rights affected the fairness, integrity or public reputation of judicial proceedings.

*United States v. Thomas*, 11 F.3d 620, 630 (6th Cir. 1993), *cert. denied*, 511 U.S. 1043 (1994).

in this case, I would find an *Apprendi* error under *Strayhorn, Ramirez* and *Flowal*.

In addition, I would not apply *United States v. Duarte*, 246 F.3d 56, 62 (1st Cir. 2001), to the substantial rights analysis in this case. Defendant's sentence in *Duarte*, unlike this case, exceeded the default statutory maximum. *Duarte*, 246 F.3d at 59. Nevertheless, the court in *Duarte* found that "the proof of [defendant's] complicity in distributing more than 1,000 kilograms of marijuana is so overwhelming that his substantial rights could not have been affected by sentencing him based on that quantity." *Id.* at 62. In contrast, there is no overwhelming evidence of crack in this case.[4] Defendant's plea agreement referenced cocaine base, not crack, and the relevant physical evidence has been destroyed.[5]

Nevertheless, I concur given the authority of *United States v. Pease*, 240 F.3d 938 (11th Cir. 2001). In *Pease*, the Eleventh Circuit found that the first two elements of plain error review, an (1) error, that was (2) plain, were satisfied by the *Apprendi* violation arising from defendant's conviction. *Id.* at 944. Although the error in *Pease* was tied to the indictment's failure to include drug quantity, a requirement which this Court, according to the majority, has not yet expressly incorporated under *Apprendi*,[6] an error, that was

---

[4] Similarly, I would not apply *United States v. Harper*, 246 F.3d 520, 530 (6th Cir. 2001), to this case, because defendant in *Harper*, unlike defendant in this case, clearly stipulated to a drug quantity falling under § 841(b)(1)(B), which provided the range within which he was sentenced.

[5] "[T]he definition of 'cocaine base' . . . makes it clear that only the 'crack' form of cocaine base should receive the 100:1 sentencing enhancement under § 2D1.1 [of the sentencing guidelines] for 'cocaine base.'" *United States v. Jones*, 159 F.3d 969, 982 (6th Cir. 1998).

[6] The majority contends that this Court, unlike several of our sister circuits, has not yet "squarely addressed" whether *Apprendi* requirements include listing drug quantities in an indictment. I would find that *Strayhorn* squarely addressed this issue. "Already, we have held, pursuant to *Apprendi*, that the government must name in the indictment

Unlike the majority, I would not apply *United States v. Pruitt*, 156 F.3d 638, 648 (6th Cir. 1998), to establish that defendant expressly admitted, by failing to object to the findings of the presentence report, that the cocaine involved was crack. The indictment in *Pruitt*, as well as the indictments in the case relied on by *Pruitt*, *United States v. Nesbitt*, 90 F.3d 164 (6th Cir. 1996), included specific drug quantities and/or types. The indictment in this case included neither drug quantity nor drug type, failing to reference "crack", or even "cocaine base".[2] Because defendant was only charged with possessing an undetermined amount of cocaine, I would not infer from defendant's failure to object to the findings of the presentence report that defendant "'expressly agreed that he should be held accountable'" for 235.42 grams of crack. *Pruitt*, 156 F.3d at 648 (quoting *Nesbitt*, 90 F.3d at 168).[3] Accordingly, because the presentence report does not resolve the reasonable doubt issue

---

[2] The indictment charged, in relevant part, as follows: "defendant . . . did knowingly and intentionally possess with intent to distribute cocaine, a Schedule II controlled substance as defined by Title 21, United States Code, Section 812. In violation of Title 21, United States Code, Section 841(a)(1)." (J.A. at 5.)

[3] The majority contends that the indictment distinctions between this case and *Pruitt* are irrelevant as to whether defendant expressly admitted to possessing 235.42 grams of crack. The indictment in *Pruitt* included drug type, and may or may not have included drug quantity. *Pruitt*, 156 F.3d at 642. The indictment in *Nesbitt* included drug type and quantity, as well as reference to § 841(b)(1)(A). *Nesbitt*, 90 F.3d at 166. I would not seize upon the possibility that the *Pruitt* indictment failed to include drug quantity to infer an express admission of crack in this case. Whether or not *Strayhorn* has settled the indictment issue under *Apprendi*, this Court has repeatedly found that drug weight is an element of an offense under § 841(b)(1)(A). *See Strayhorn*, 250 F.3d at 468; *Ramirez*, 242 F.3d at 351-52; *Flowal*, 234 F.3d at 938. When the indictment, the plea agreement, and the court, in carrying out its obligation under Fed. R. Crim. Pro. 11 to inform the defendant of the nature of the charge to which he is pleading guilty, fail to mention both the relevant offense, § 841(b)(1)(A), and the determinative element of that offense, crack, I would not find that defendant expressly admitted to 235.42 grams of crack, falling under § 841(b)(1)(A).

---

**B.   The District Court Did Not Commit Plain Error in Sentencing Defendant in Accordance with the Sentencing Guidelines for Crack Cocaine.**

The present appeal arises from the oft-noted 100-to-1 ratio found at 21 U.S.C. § 841(b)(1) and in the U.S. Sentencing Guidelines, through which a given quantity of one form of cocaine is equated, for sentencing purposes, to one hundred times this amount of cocaine in another form. For instance, federal drug law imposes the same range of penalties for drug offenses involving either (i) 50 grams of "a mixture or substance . . . which contains cocaine base," or (ii) one hundred times this amount, or 5 kilograms, of "cocaine." *See* 21 U.S.C. §§ 841(b)(1)(A)(ii), (iii). Likewise, the drug quantity table found at § 2D1.1(c) of the Sentencing Guidelines establishes the same base offense level for 5 grams of "cocaine base" and 500 grams of "cocaine." *See* U.S.S.G. § 2D1.1(c)(7). Thus, the characterization of a substance as either "cocaine" or "cocaine base" can have a substantial effect at sentencing. The Government bears the burden of establishing that the substance at issue in a given case is "cocaine base," thereby triggering the higher sentencing range. *See Owusu*, 199 F.3d at 339.

To further complicate matters, the Sentencing Guidelines equate "cocaine base" with the street term "crack." For example, a drug equivalency table which follows U.S.S.G. § 2D1.1 uses the terms "cocaine base" and "crack" interchangeably, and a note to the drug quantity table at § 2D1.1(c) explains:

> "Cocaine base," for the purposes of this guideline, means "crack." "Crack" is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form.

U.S.S.G. § 2D1.1(c), note d. In adding this note to § 2D1.1(c), the Sentencing Commission explained:

The amendment addresses an inter-circuit conflict. *Compare*, *e.g.*, *United States v. Shaw*, 936 F.2d 412 (9th Cir. 1991) (cocaine base means crack) *with United States v. Jackson*, 968 F.2d 158 (2d Cir) (cocaine base has a scientific, chemical definition that is more inclusive than crack), *cert. denied*, 113 S. Ct. 664 (1992). Under this amendment, forms of cocaine base other than crack (*e.g.*, coca paste, an intermediate step in the processing of coca leaves into cocaine hydrochloride, scientifically is a base form of cocaine, but it is not crack) will be treated as cocaine.

U.S.S.G. App. C, amend. 487.[2]

Against this definitional backdrop, Defendant here argues that the Government has not met its burden of showing that the substance identified in a laboratory report as "cocaine freebase" was, in fact, "cocaine base" or "crack" within the meaning of U.S.S.G. § 2D1.1(c), as necessary to justify his 188-month sentence. If this substance does not qualify as "cocaine base" or "crack" under the Sentencing Guidelines, then the total amount of "cocaine" chargeable to Defendant, in both powder and "freebase" form, would be 249.90 grams. This, in turn, would result in a base offense level of 20, *see*

---

[2]Unfortunately, in its attempt to resolve one circuit split, the Sentencing Commission apparently has engendered another. Specifically, there is some disagreement as to whether this Guideline amendment, which was subject to congressional review, should inform judicial interpretation of the term "cocaine base" as it appears in federal drug statutes such as § 841(b)(1). *Compare*, *e.g.*, *United States v. Munoz-Realpe*, 21 F.3d 375, 377-78 (11th Cir. 1994) (holding that Congress, by allowing the amendment to go into effect, meant for the same definition of "cocaine base" to apply under both the Sentencing Guidelines and the drug statutes) *with United States v. Palacio*, 4 F.3d 150, 154-55 (2d Cir. 1993) (finding that the Guidelines amendment did not undermine the vitality of prior Second Circuit rulings that the statutory term "cocaine base" encompasses more than just crack cocaine). We have not yet squarely weighed in on this question, but have only hinted that we might be inclined to follow the Second Circuit's approach. *See United States v. Jones*, 159 F.3d 969, 982 n.11 (6th Cir. 1998). For reasons that will become clear, we need not resolve this issue in this case.

---

light of *McMillan v. Pennsylvania*, 477 U.S. 79 (1986). *McMillan* upheld a state statute that exposed defendants to a mandatory minimum sentence upon the finding, by a preponderance of the evidence, that the defendant "visibly possessed a firearm" during the commission of certain enumerated felonies. *McMillan*, 477 U.S. at 81. *Apprendi* limited *McMillan* "to cases that do not involve the imposition of a sentence more severe than the statutory maximum for the offense established by the jury's verdict--a limitation identified in the *McMillan* opinion itself." *Apprendi*, 530 U.S. at 487 n.13.

I would not find the *Flowal* line of cases invalid under *McMillan* simply because of *McMillan*'s own self-imposed limitations, which were referenced in *Apprendi*: *McMillan* limited itself to a state statutory scheme that "'neither alter[ed] the maximum penalty for the crime committed nor create[d] a separate offense calling for a separate penalty; [instead, the scheme] operate[d] solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it[.]'" *Apprendi*, 530 U.S. at 486 (quoting *McMillan*, 477 U.S. at 87-88). Thus, unlike *McMillan*, exposing a defendant to § 841(b)(1)(A) does more than limit a sentencing court's discretion in selecting a penalty within the range already available to it; rather, it empowers a court to consider a sentence of up to life imprisonment. In addition, § 841(b)(1)(A) is itself a separate offense, which calls for a penalty separate from § 841(b)(1)(C). *See Flowal*, 234 F.3d at 938 (quoting *Apprendi*, 530 U.S. at 501) (Thomas, J., concurring). The Ninth Circuit has similarly distinguished *McMillan* from § 841(b). *See United States v. Valasco-Heredia*, 249 F.3d 963, 968 (9th Cir. 2001). Moreover, *Apprendi* "reserve[d] for another day" the question of whether *stare decisis* considerations precluded full reconsideration of *McMillan*. *Apprendi*, 530 U.S. at 487 n.13. Thus, I would find, under the *Flowal* line of cases, that *Apprendi* requirements apply to defendant's possession of crack in this case, notwithstanding *McMillan* and *Garcia*.

of the higher statutory range," which would indicate that the sentencing judge felt constrained when sentencing under the mandatory higher range.    *Garcia*, __F.3d__, 2001 WL 617832, at *5.

I do not read *Strayhorn*, *Ramirez*, *Flowal*, and *Apprendi* as establishing, as *Garcia* found, that *Apprendi* safeguards reach a defendant exposed to a higher sentencing range only when defendant's sentence matches the statutory mandatory minimum.    *See Strayhorn*, 250 F.3d at 469 (*Apprendi* applies where "'a finding as to the weight of . . . drugs determined the [applicable] range of penalties'") (quoting *Flowal*, 234 F.3d at 936); *Ramirez*, 242 F.3d at 351 ("moving up the scale of mandatory minimum sentences [under § 841(b)] invokes the full range of constitutional protections [under *Apprendi*]"); *Flowal*, 234 F.3d at 937 (*Apprendi* requirements triggered when defendant was "deprived . . . of the opportunity" to receive less than the mandatory minimum sentence under § 841(b)(1)(A)); *Apprendi*, 530 U.S. at 490 ("'[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed.'") (quoting *Jones v. United States*, 526 U.S. 227, 252-53 (1999)). Unlike *Garcia*, I do not read *Ramirez* as requiring an indication of judicial constraint to trigger a defendant's Fifth, Sixth, and Fourteenth Amendment rights under *Apprendi*. Such reasoning implies that a judge's decision to impose a sentence greater than the statutory minimum is also a decision to halt operation of a defendant's constitutional rights under *Apprendi*. Regardless, under *Strayhorn* and *Flowal*, *Apprendi* requirements apply to a defendant who, as in this case, was deprived of the opportunity to receive less than the mandatory minimum sentence under § 841(b)(1)(A), the applicable sentencing range determined by the factual finding of crack. Therefore, the existence of crack as an element of the offense must be proven beyond a reasonable doubt.

The majority also questions the *Flowal* line of cases by citing *United States v. Hill*, __F.3d__, 2001 WL 608963 (7th Cir. June 5, 2001), which criticized *Flowal* and its progeny in

U.S.S.G. § 2D1.1(c)(10), and, with a three-level reduction for acceptance of responsibility and a category VI criminal history, would produce a sentencing range of 70 to 87 months of imprisonment. Under these circumstances, Defendant asserts that his 188-month sentence was the product of plain error.

We cannot agree that the District Court committed any sort of error, plain or otherwise. To accept Defendant's argument to the contrary would require us to disregard the instances in which the substance at issue was expressly characterized as "crack" in the proceedings below, and the consistent failure of Defendant or his counsel to raise any sort of objection to this terminology. First, at the March 8, 1999 change-of-plea hearing, the Government's counsel summarized the plea agreement reached between the parties, including the Government's agreement to stipulate that "the quantity of drugs in this case is 235.42 grams of cocaine base, *also known as crack*, and 14.48 grams of cocaine powder." (Plea Hearing Tr. at 2-3, J.A. at 27-28 (emphasis added).)    Neither Defendant nor his counsel voiced any objection to any part of this summary. Next, the PSIR expressly stated that "this case involves *both powder cocaine and crack cocaine*," and that "[t]he 235.42 grams of cocaine base *('crack')* have a marijuana equivalency of 4,708.4 kilograms." (PSIR at 2, J.A. at 42 (emphasis added).) Again, neither Defendant nor his counsel objected to this (or any other) portion of the PSIR. To the contrary, defense counsel affirmatively represented at the April 21, 1999 sentencing hearing that Defendant had reviewed the PSIR and had no objections, and the District Court then proceeded to adopt its factual findings and application of the Sentencing Guidelines. (Sentencing Hearing Tr. at 2-3, J.A. at 34-35.)

Apart from these express references to crack cocaine, the record contains ample evidence that the Government intended to pursue a sentence under the statutory and Guideline provisions governing cocaine base or crack cocaine, and that Defendant was aware of this prosecutorial objective. Initially, we note the several statements in the record that Defendant

faced a 10-year statutory minimum term of imprisonment. Such declarations can be found (i) in Defendant's plea agreement, which provided that the charged offense carried a "minimum term of imprisonment of 10 years, [and] a maximum term of life imprisonment," (Plea Agreement at 1, J.A. at 9); (ii) at Defendant's change-of-plea hearing, during which defense counsel expressly confirmed that the plea agreement specified a minimum prison term of 10 years, and Defendant himself also stated on the record — twice, in fact — his understanding that he faced a 10-year minimum sentence, (Plea Hearing at 3-5, J.A. at 28-30); and (iii) in the PSIR, which stated that the applicable statutory penalty provision, 21 U.S.C. § 841(b)(1)(A), called for a "term of imprisonment [of] not less than ten years and up to life." (PSIR at 18, J.A. at 58.)

These repeated references to a 10-year statutory minimum prison term take on particular significance when it is recalled that this 10-year minimum could *only* apply if Defendant's drug offense involved "cocaine base" within the meaning of the federal drug statute. The total amount of cocaine chargeable to Defendant, in any form, was 249.90 grams. If this entire quantity were treated as cocaine, and not cocaine base, the enhanced penalties found at 21 U.S.C. §§ 841(b)(1)(A) and (B) — respectively, a 10-year and 5-year mandatory minimum term of imprisonment — would not apply, and Defendant instead would be subject to the penalties set forth at § 841(b)(1)(C). This latter provision, however, could not have been the source of the 10-year minimum referred to in the District Court proceedings, as it includes no statutory minimum term of imprisonment whatsoever,[3] but imposes only a maximum sentence of "not more than 20

---

[3]The lone exception, not applicable here, is where "death or serious bodily injury results from the use of such substance," in which case the statute prescribes a minimum prison term of 20 years. 21 U.S.C. § 841(b)(1)(C).

---

## CONCURRENCE

---

CLAY, Circuit Judge, concurring. I agree that the district court's enhancement of defendant's sentence for crack cocaine should be affirmed. The deficient indictment in this case, however, warrants closer scrutiny of applicable precedent and fuller analysis under the elements of plain error review.

On plain error review, this Court may reverse a decision only if there is an (1) error, (2) that is plain, (3) that affects substantial rights. *United States v. Page*, 232 F.3d 536, 543 (6th Cir. 2000). I would find that defendant's *Apprendi* claim satisfies the first two elements of plain error analysis, i.e., that the district court committed an error that was plain. *See Apprendi v. New Jersey*, 530 U.S. 466 (2000). A factual finding that a conviction under 21 U.S.C. § 841(a)(1) involved crack, which exposes a defendant to a higher sentencing range under § 841(b), triggers *Apprendi* requirements. *See United States v. Strayhorn*, 250 F.3d 462, 470-71 (6th Cir. 2001); *United States v. Ramirez*, 242 F.3d 348, 351 (6th Cir. 2001); *United States v. Flowal*, 234 F.3d 932, 936 (6th Cir. 2000). Thus, *Apprendi* requires that defendant's possession of crack in this case be proven beyond a reasonable doubt.[1]

The majority contends that the *Flowal* line of cases has been limited by *United States v. Garcia*, __F.3d __, 2001 WL 617832 (6th Cir. June 7, 2001). *Garcia* found that exposure to a higher sentencing range under *Ramirez* triggers *Apprendi* requirements only when the actual sentence is "at the bottom

---

[1]The total amount of cocaine chargeable to defendant, in any form, was 249.90 grams, which would fall under the penalty range of zero to twenty years of imprisonment set forth in § 841(b)(1)(C). However, the 100:1 enhancement for crack exposed defendant to the penalty range of imprisonment for ten years to life set forth in § 841(b)(1)(A).

### III.  *CONCLUSION*

For the reasons set forth above, we AFFIRM Defendant's 188-month sentence for possession with intent to distribute cocaine.

---

Supreme Court's decision in *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S. Ct. 2411 (1986), which the *Apprendi* Court expressly declined to overrule. *See United States v. Hill*, ___ F.3d ___, 2001 WL 608963, at *1 (7th Cir. June 5, 2001).

More importantly, we recently limited the rule of *Flowal* and its progeny to situations where a District Court makes findings of fact under the "preponderance" standard and then imposes a sentence at the bottom of a higher statutory range, thereby evincing its belief that it was "constrained by a specific statute to impose the sentence it did." *Garcia*, *supra*, 2001 WL 617832, at *5.  Under *Garcia*, our latest word on the subject, Defendant's sentence does not run afoul of *Apprendi*, because it is both *below* the 20-year statutory maximum established by the "catchall" provision at § 841(b)(1)(C), and *above* the 10-year statutory minimum found at § 841(b)(1)(A).

---

years."[4]  21 U.S.C. § 841(b)(1)(C).  And, if there were any question as to the statutory penalty provision under which the prosecution sought to proceed, the PSIR expressly cites § 841(b)(1)(A) as the statutory source of the minimum (10 years) and maximum (life) terms of imprisonment to which Defendant was subject.  (*See* PSIR at 18, J.A. at 58.)  Thus, through repeated declarations that Defendant was subject to a 10-year minimum sentence, and through at least one express reference to § 841(b)(1)(A), the proceedings and papers in the court below left no room for doubt that the charged drug offense involved both cocaine and cocaine base, with the latter triggering the statutory 100-to-1 disparity in sentencing consequences.

Similarly, the sentencing calculations in the PSIR confirmed that Defendant's offense conduct triggered the Sentencing Guidelines' 100-to-1 quantity ratio for cases involving crack cocaine.  As noted earlier, if it were otherwise, and if the charged offense in this case involved only cocaine and not crack, the base offense level for 249.90 grams of cocaine would have been 20.  *See* U.S.S.G. § 2D1.1(c)(10).  Instead, the PSIR calculated a base offense level of 34, and explained that this was because "this case involves both powder cocaine and crack cocaine." (PSIR at 2, J.A. at 42.)  Once again, then, the sentencing calculations and disclosures in the PSIR were entirely consistent with the express statements, both in that document and elsewhere in the record, that the substances attributed to Defendant included both cocaine and crack cocaine.

Given all this, it would seem difficult for Defendant to credibly profess any uncertainty as to the nature of the offense to which he pled guilty, or as to the necessary consequences of this plea.  Nevertheless, in arguing that the direct and indirect references in the record to cocaine base and crack cocaine are insufficient to sustain his sentence, Defendant

---

[4]This statutory maximum is increased to 30 years for individuals who have previous convictions for felony drug offenses.  *See* 21 U.S.C. § 841(b)(1)(C).

refers us to the decisions in *United States v. Garrett*, 189 F.3d 610, 611-13 (7th Cir. 1999), *United States v. James*, 78 F.3d 851, 855-58 (3d Cir. 1996), *Munoz-Realpe*, *supra*, 21 F.3d at 377-79, and *United States v. Johnson*, 976 F. Supp. 284, 290-93 (D. Del. 1997). In each of these cases, the court held that the Government had not sufficiently discharged its burden of establishing a factual basis for sentencing the defendant under the Sentencing Guidelines provisions pertaining to crack cocaine. Defendant argues that the same is true here, and that these prior decisions, under allegedly similar facts, compel the conclusion that Defendant's sentence in this case was the product of plain error.

On inspection, however, we find three of these four cases readily distinguishable. Specifically, in *James*, *Munoz-Realpe*, and *Johnson*, the defendants vigorously contested the Government's position that the charged offenses involved crack cocaine. *See James*, 78 F.3d at 856-57; *Munoz-Realpe*, 21 F.3d at 376; *Johnson*, 976 F. Supp. at 286-87, 290-93. Indeed, in at least two of these cases, the defendants offered extensive testimony and other evidence at sentencing to identify and distinguish the many forms of cocaine base, and to refute the Government's contention that the substance at issue in the case was crack cocaine. *See James*, 78 F.3d at 856-57; *Johnson*, 976 F. Supp. at 286-93.[5] In stark contrast, throughout the District Court proceedings in the present case, Defendant never once challenged the Government's characterization of the drugs in question as crack, nor did he proffer any evidence or testimony which might cast doubt on this proposition. To the contrary, Defendant and his counsel affirmatively accepted, without objection, the unambiguous references to crack cocaine in the PSIR. We recently distinguished *James* and *Johnson* on precisely this ground. *See United States v. Williams*, 176 F.3d 301, 309 (6th Cir. 1999).

---

[5]The decision in *Johnson* features a particularly comprehensive and informative discussion of the different forms of cocaine. *See Johnson*, 976 F. Supp. at 287-89.

plain error standard. As this panel recently observed in another case, a violation of the principles set forth in *Apprendi* rises to the level of "plain error" only where the defendant's sentence exceeds the maximum possible sentence that could be imposed by statute *absent* the offending "sentencing factor" determined under the too-lenient "preponderance" standard. *See United States v. Neuhausser*, 241 F.3d 460, 464-66, 471-72 (6th Cir. 2001); *see also United States v. Munoz*, 233 F.3d 410, 413-14 (6th Cir. 2000) (finding that *Apprendi* was not applicable where "Defendant's sentence did not exceed the statutory maximum for the portion of the indictment to which he validly pled guilty"); *United States v. Page*, 232 F.3d 536, 543-45 (6th Cir. 2000). For example, even if a determination of a particular drug quantity is improperly made under the "preponderance" standard, there is no plain error in a sentence that lies within the applicable statutory sentencing range for the same offense involving an indeterminate amount of drugs.

Such is the case here. Even if Defendant's argument were accepted, and all of the cocaine attributed to him were treated as of "indeterminate" type, rather than some being in the form of crack cocaine, his sentence would then be determined by resort to 21 U.S.C. § 841(b)(1)(C), the "catchall" penalty provision for offenses involving cocaine. This statutory provision establishes a sentencing range of zero to 20 years of imprisonment. Defendant's 188-month sentence does not exceed the statutory maximum of 20 years. Consequently, *Apprendi* does not assist Defendant in his effort to identify a plain error in his sentence.[9]

---

[9]Judge Clay's concurrence challenges this conclusion, and instead suggests that *Apprendi* is implicated whenever a factual finding under the "preponderance" standard exposes a defendant to a higher sentencing range. To be sure, our decision in *United States v. Flowal*, 234 F.3d 932, 936-38 (6th Cir. 2000), lends some support to the concurrence's position, and similar language can be found in *United States v. Ramirez*, 242 F.3d 348, 351-52 (6th Cir. 2001), and *Strayhorn*, *supra*, 250 F.3d at 468-70. *Flowal*, however, is not without its critics: the Seventh Circuit has described our Circuit as a "minority of one" in its broad reading of *Apprendi*, and has suggested that *Flowal* cannot be squared with the

quantity overcame any error in the omission of this information from the indictment:

> Pease notes that the amount of cocaine involved in the offense was disputed at sentencing. However, Pease has never contended that he conspired to distribute less than 500 grams. In fact, in both his plea agreement and during the plea colloquy Pease admitted that he had accepted delivery of three kilograms of cocaine. Under 21 U.S.C. § 841(b)(1)(B), conspiracy to distribute this quantity of cocaine is punished with a statutory range of from five to forty years. Because the district court sentenced Pease to only thirty years, ten years less than the statutory maximum for conspiracy to distribute the quantity admitted, Pease cannot show that the error affects substantial rights.

240 F.3d at 944 (footnote and citations omitted).

The reasoning of *Pease* and *Duarte* applies with full force here. We already have found that Defendant effectively admitted the types and quantities of cocaine involved in the charged drug offense, both through his own affirmative statements, and by virtue of his failure to challenge the Government's statements at the change-of-plea hearing and in the PSIR. Moreover, as in *Duarte*, Defendant here was repeatedly advised, both in the plea agreement and at the change-of-plea hearing, that a plea of guilty to this drug offense would expose him to a mandatory minimum 10-year term of imprisonment and a maximum term of life imprisonment, and the PSIR further emphasized this point by expressly citing the penalty provision at 21 U.S.C. § 841(b)(1)(A). Defendant's 188-month sentence lies near the low end of this range, and well below the statutory maximum, leading to the conclusion, as held in *Pease*, that any alleged defect in the indictment did not affect Defendant's substantial rights.

Indeed, even if we were to view the record as leaving some doubt about the forms of cocaine involved in this case, Defendant's present challenge still would fail to satisfy the

This leaves only the Seventh Circuit's decision in *Garrett*, *supra*. To be sure, that case appears factually similar to this one, in that the defendant in *Garrett*, like Defendant here, failed to raise a challenge at his initial sentencing to statements — in that case, in an indictment, in a written stipulation, and at a plea hearing — that the substance at issue was crack cocaine. *See Garrett*, 189 F.3d at 610-11. Nevertheless, the Seventh Circuit held that the defendant was not bound by his acquiescence, where the record was insufficient to demonstrate that the defendant's admissions as to drug type were knowing and voluntary. 189 F.3d at 612. The Court noted that the defendant had been sentenced prior to its decision in *United States v. Adams*, 125 F.3d 586, 590 (7th Cir. 1997), in which the Court had addressed the distinction in the Sentencing Guidelines between cocaine base and crack, and had cautioned that "such a severe difference in punishment deserves great care in application." Because the District Court in *Garrett* "did not have the benefit of our decision in *Adams*," and because "[t]he terms 'cocaine base' and 'crack' were used interchangeably by the parties and the court, indicating that, at the time, they may not have understood the legal differences between the two," the Seventh Circuit remanded the matter for resentencing to ensure that any factual admissions by the defendant as to drug type were knowing and voluntary. *Garrett*, 189 F.3d at 612.

We decline to follow *Garrett*, finding it both factually distinguishable and unpersuasive in a portion of its reasoning. First, while the defendant in *Garrett* failed to object at his *initial* sentencing to the application of the enhanced penalty for crack cocaine, he did raise this objection at his first *resentencing*, following an earlier remand from the Seventh Circuit on a different issue. *See Garrett*, 189 F.3d at 611. Thus, in *Garrett*, unlike here, the defendant made his challenge before the District Court in the first instance. Moreover, as Defendant acknowledges, our decision in *United States v. Jones*, 159 F.3d 969, 981-83 (6th Cir. 1998), thoroughly discussed the Sentencing Guidelines' scheme of using "cocaine base" as a generic term and "crack" as a specific form of this substance, with only the latter subject to

a 100-to-1 quantity enhancement under § 2D1.1. Because we decided *Jones* the year before Defendant's plea and sentencing, there is less cause for concern here that the District Court or Defendant might have been unaware of the significant sentencing ramifications flowing from the characterization of a drug as crack cocaine. *Cf. United States v. Washington*, 115 F.3d 1008, 1010 (D.C. Cir. 1997) (finding that, in light of the Guideline amendments clarifying the scope of the term "cocaine base," the use of that term in a PSIR created "only a very remote possibility of verbal confusion").

Next, to the extent that *Garrett* advocates, in light of the Sentencing Guidelines' 100-to-1 quantity enhancement for crack cocaine, that courts should more carefully scrutinize a defendant's factual admissions as to drug type versus other types of admissions, we decline to adopt this suggestion. A guilty plea typically involves a whole host of factual admissions, with varying implications to a defendant's sentence. To cite an obvious example, Defendant's sentence in this case was significantly affected by his threshold admission that he possessed cocaine for the purpose of distribution. On top of this, a presentence report typically includes yet more factual assertions, each with an additional impact on the resulting sentencing range. Here, for instance, the calculation of Defendant's sentencing range was affected by his history of prior arrests and convictions.

To be sure, a District Court generally must ensure that a defendant's plea is knowing and voluntary, and that there is an adequate factual basis for this plea. In addition, a defendant must be given a full and fair opportunity to challenge the facts as set forth in a presentence report. We see no reason, however, to deem certain facts especially "important" in light of their sentencing implications, and to require that these facts be established to some greater degree of certainty, or that the defendant must express his specific understanding of the consequences of admitting these particular facts. Rather, we believe such a scheme would, in the words of the D.C. Circuit, "effectively create a duty for

*v. Duarte*, 246 F.3d 56, 62-64 (1st Cir. 2001). The Court explained:

> A guilty plea in a drug-trafficking case usually entails an admission anent the amount of drugs involved. For all intents and purposes, such an admission effectively resolves any doubts about drug quantity. In the ordinary case, we think that it will be difficult, if not impossible, for a defendant to show any cognizable prejudice in connection with a sentence based on a drug quantity that he has acknowledged, even though his sentence exceeds the statutory maximum for trafficking in unspecified amounts of those drugs.
>
> This is such a case. As said, Duarte signed a plea agreement in which he unequivocally accepted responsibility for a specified amount of drugs (1,000 to 3,000 kilograms). This admission, which largely dictated the length of his sentence, took any issue about drug quantity out of the case. That being so, Duarte scarcely can claim to have been prejudiced either by the omission of specific drug quantities from the body of the indictment or by the absence of a jury determination on the point.

246 F.3d at 62. The Court further observed that the maximum penalties set forth in the plea agreement, and the defendant's acknowledgment in this agreement that his guilty plea exposed him to these maximum penalties, provided "fair warning" of the Government's intention to seek a sentence beyond the default statutory maximum for an unspecified amount of drugs. 246 F.3d at 62-63.

In another case involving an *Apprendi*-based challenge to a guilty plea, the Eleventh Circuit likewise agreed that the defendant might well have satisfied the first two prongs of the plain error standard, but nevertheless concluded that no substantial rights were affected through this error. *See United States v. Pease*, 240 F.3d 938, 943-44 (11th Cir. 2001). The Court found that the defendant's admission as to drug

district court judges to ferret out, singlehandedly, every possible defect in fact or law in the presentence report." *Washington, supra*, 115 F.3d at 1011. As *Washington* cogently observes, our system places that duty on the defendant and his counsel. 115 F.3d at 1011. This is especially true where, as here, the criminal defense bar has been amply apprised of the consequences that flow from the resolution of a particular factual issue.

We also find ourselves in agreement with the Government's position, as stated in its brief on appeal, that the prosecution "has no burden to establish at sentencing a factual issue which is not in dispute." (Gov't Appeal Br. at 5.) Admittedly, the sole objective evidence in this case concerning drug type, the laboratory report, is not conclusive; it apparently refers, somewhat unhelpfully, to "cocaine freebase" and "powder cocaine," and does not provide any further information as to drug form or purity. (PSIR at 1, J.A. at 41.) Yet, if Defendant had any basis for challenging the PSIR's treatment of "cocaine freebase" as "crack" for purposes of applying the Sentencing Guidelines, the time and place to raise such an objection was at sentencing before the District Court. At that point, the Government could have, if necessary, submitted additional proof in support of its position that Defendant's drug offense involved crack.[6]

Defendant, however, raised no such objection, either to the reference to crack at his change-of-plea hearing or to the use of this term in the PSIR. Neither did he challenge the sentencing range calculation in the PSIR, even though it was evident that this calculation was based on the 100-to-1

---

[6] As matters now stand, it would no longer be possible for the Government to secure an additional laboratory analysis to corroborate this position. Rather, following up on our inquiry at oral argument, the Government has advised us that the drug evidence seized by the Louisville Police Department during its arrest of Defendant was destroyed on March 20, 2000, without the knowledge or prior approval of the Government. This highlights the practical importance of raising any and all factual challenges at sentencing, when the parties are in the best position to litigate these issues and support their respective positions.

---

We have yet to squarely address this issue, and we need not do so here.[8] Under the standards governing this appeal, even if a purported defect in the indictment were deemed to rise to the level of plain error, we still would have to inquire whether this error "affects substantial rights." *See Thomas, supra*, 11 F.3d at 630. Under similar circumstances, the First Circuit recently held that a defendant's substantial rights were not affected by an indictment which lacked any reference to a specific amount of drugs, where the defendant had admitted to a quantity of drugs in a plea agreement. *See United States*

---

[8] Judge Clay's concurrence suggests that we previously have reached this issue, and have held, in *United States v. Strayhorn*, 250 F.3d 462, 467-68 (6th Cir. 2001), that there is a separate violation of *Apprendi*, satisfying the first two prongs of the plain error standard, whenever an indictment fails to specify drug quantities. So construed, however, *Strayhorn* would be irreconcilable with several of our post-*Apprendi* precedents, in which we found no violation of *Apprendi* — and, therefore, did not even reach the third step of the plain error analysis — despite the absence of any reference to drug quantities in the indictment. *See, e.g., United States v. Garcia*, ___ F.3d ___, 2001 WL 617832, at *4-*5 (6th Cir. June 7, 2001); *Harper*, 246 F.3d at 523, 530-31; *United States v. Neuhausser*, 241 F.3d 460, 466, 468, 471-72 & n.9 (6th Cir. 2001); *United States v. Munoz*, 233 F.3d 410, 412-14 (6th Cir. 2000). Thus, we maintain our belief that we, like the Supreme Court in *Apprendi*, have left the "indictment question" for another day.

Moreover, we do not share Judge Clay's view that *Pruitt, supra*, is inapplicable here, by virtue of purported distinctions between the indictments in the two cases. As far as can be discerned from the opinion, the indictment in *Pruitt* referenced crack cocaine but did not specify a quantity. Yet, upon noting that the presentence report attributed a specific quantity of crack cocaine to the defendant, the panel held that the defendant's failure to object constituted "an express admission of the *amount and type* of drugs attributed to him in the PSR." *Pruitt*, 156 F.3d at 648 (emphasis added). The panel then affirmed the defendant's sentence in light of these admissions, without pausing to distinguish between drug type (which was included in the indictment) and drug quantity (which was not). Evidently, then, *Pruitt*'s reach is not limited to cases where a defendant admits matters set forth in an indictment. In any event, as discussed below, Defendant's sentence here would not pose a problem under *Apprendi* even if we viewed his admissions as encompassing only an indeterminate type and quantity of cocaine.

enhancement, under both the relevant federal statute and the Sentencing Guidelines, for offenses involving crack cocaine. Whether or not the District Court or the prosecution could have elicited a more affirmative statement from Defendant that his offense did, in fact, involve crack, and whether or not the Government could have marshaled additional evidence to prove this uncontested fact, we find that Defendant's silence in the face of repeated and consistent assertions of this fact rendered any such additional measures unnecessary. Indeed, we have previously recognized this principle, holding that a defendant's statement of no objections to a presentence report constitutes "an express admission of the amount and type of drugs attributed to [the defendant] in the PSR." *United States v. Pruitt*, 156 F.3d 638, 648 (6th Cir. 1998). We adhere to this rule in this case, holding that Defendant's failure to raise any sort of challenge in the proceedings below operates as an admission as to the drug types and quantities set forth in the PSIR, and thereby provides the requisite factual basis to sustain Defendant's enhanced sentence for a drug offense involving crack cocaine.

Finally, at oral argument, Defendant suggested that the Supreme Court's recent decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000), undermines the validity of his sentence. We find Defendant's appeal to *Apprendi* unavailing, for several reasons. First, it is true, as we recognized in *United States v. Rebmann*, 226 F.3d 521, 524-25 (6th Cir. 2000), that *Apprendi* implicates the standard of proof in criminal cases, requiring that certain facts previously determined by the sentencing court under a "preponderance of the evidence" standard must now be proven beyond a reasonable doubt. Yet, Defendant's factual admissions in this case obviate any possible concerns about the proper standard of proof. As noted, Defendant failed to present any evidence, objection, or argument before the District Court that might cast any doubt, reasonable or otherwise, on the Government's assertion that his drug offense involved crack cocaine. Thus, a heightened standard of proof would not have altered the sentencing court's resolution of this uncontested factual issue. *See Apprendi*, 120 S. Ct. at 2361 (distinguishing the Court's

prior ruling in *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S. Ct. 1219 (1998), on the ground that the defendant in that case had admitted to the prior felony convictions used to enhance his sentence, so that "no question concerning . . . the standard of proof that would apply to a contested issue of fact was before the Court" in that case); *United States v. Harper*, 246 F.3d 520, 530-31 (6th Cir. 2001) (rejecting an *Apprendi*-based challenge to a sentencing court's determination of drug quantity, where the defendant "stipulated to the amount of drugs for which he was held responsible, and the district court did not rely on any fact outside of the plea agreement to determine drug quantity at sentencing").

Next, Defendant suggests that the indictment in this case fails to survive scrutiny under *Apprendi*, because it is silent as to type or quantity of cocaine. To be sure, certain language in *Apprendi* supports this proposition, such as the Court's statement that, "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than a prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Apprendi*, 120 S. Ct. at 2355 (quoting *Jones v. United States*, 526 U.S. 227, 243 n.6, 119 S. Ct. 1215, 1224 n.6 (1999)).[7] This has led some of our sister circuits to hold that, in order for the Government to seek an enhanced penalty based on drug quantity, the amount of drugs must be stated in the indictment. *See, e.g., United States v. Fields*, 242 F.3d 393, 396 (D.C. Cir. 2001); *United States v. Jones*, 235 F.3d 1231, 1235-36 (10th Cir. 2000); *United States v. Rogers*, 228 F.3d 1318, 1327 (11th Cir. 2000).

--------

[7]On the other hand, another portion of *Apprendi* reflects the Court's intention to reserve the "indictment question" for another day. *See Apprendi*, 120 S. Ct. at 2355-56 n.3.