UNITED STATES of America, Appellee,

v.

Paul WASHINGTON, Appellant.

No. 96–3057.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 21, 1997.

Decided June 6, 1997.

Santha Sonenberg, Assistant Federal Public Defender, Washington, DC, argued the cause for appellant. With her on the briefs was A.J. Kramer, Federal Public Defender.

Elizabeth H. Danello, Assistant U.S. Attorney, Washington, DC, argued the cause for appellee. With her on the brief were Eric H. Holder, Jr., U.S. Attorney, and John R. Fisher, Assistant U.S. Attorney.

Before EDWARDS, Chief Judge, SILBERMAN and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

Appellant Paul Washington was charged with three counts of unlawful distribution of five grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii), and one count of possession with intent to distribute 50 or more grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii). He pleaded guilty to one of the distribution counts and agreed that the amounts involved in the other counts would constitute "relevant conduct" for purposes of calculating his base offense level under the Sentencing Guidelines. See U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.3 (Nov.1995); *United States v. Salmon,* 948 F.2d 776, 778 (D.C.Cir. 1991) (noting relation of dismissed counts to "relevant conduct"). The presentence report concluded that the relevant conduct included a total of 379.94 grams of cocaine base, and calculated a sentencing range of 151–188 months. (Inexplicably, the presentence report omitted the 24.85 grams involved in the count of conviction, but the omission had no effect on Washington's base offense level.) After a hearing at which the government requested the court to follow the recommendations of the presentence report but the court itself made no explicit reference to the report, the court sentenced Washington to 160 months in prison.

On appeal, Washington challenges only his sentence.[1] He argues that the government failed to prove that the 379.94 grams of cocaine base were specifically *crack* cocaine, the only form of cocaine base to carry higher sentences than cocaine under the Guidelines.

---

1. He also argues that the district court should have departed downwards because the Sentencing Commission's "Special Report to the Congress: Cocaine and Federal Sentencing Policy" (Feb.1995), although not altering the Guidelines' much greater severity for crack than for cocaine, made arguments to Congress tending to under-

mine the wisdom of so great a disparity. He recognizes, however, that we rejected the theory in *United States v. Anderson,* 82 · F.3d 436 (D.C.Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 375, 136 L.Ed.2d 264 (1996), and raises the issue only to preserve it for purposes of a possible petition for certiorari.

See U.S.S.G. § 2D1.1(c), Note D to Drug Quantity Table (Nov.1995). Acknowledging that he failed to raise the issue before the trial court, he asserts there was plain error. Because there was no clear or obvious error, we affirm without addressing the remaining requirements of plain error, i.e., whether there was prejudice to the defendant and whether the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States,* — U.S. —, —, 117 S.Ct. 1544, 1546, 137 L.Ed.2d 718 (1997) (citations and quotations omitted).

\* \* \*

■ The burden is on the government to prove facts in support of a sentence enhancement by a preponderance of the evidence. See *United States v. Burke,* 888 F.2d 862, 869 (D.C.Cir.1989). Once the presentence report has been prepared, however, the court may generally, unless the defendant contests the report's factual assertions, assume they are correct without conducting its own inquiry. Indeed, a general objection, in the form of a claim that the report does not satisfy the government's burden of proof, is not enough to draw the facts into question. *United States v. Pinnick,* 47 F.3d 434, 437 (D.C.Cir.1995). Whether the sentencing court explicitly refers to the presentence report is of no consequence if it follows the report's recommendations.

In confronting the plain error standard, Washington notes that in *United States v. Saro,* 24 F.3d 283 (D.C.Cir.1994), we approved a slightly relaxed idea of the *prejudice* necessary for plain error. *Id.* at 286–88. He quotes *Saro:* " 'Plain error' is found in the sentencing context whenever there is a 'reasonable likelihood that the sentencing court's obvious errors affected [the defendant's] sentence.' " Appellant's Brief at 6, quoting *Saro,* 24 F.3d at 288. But it should be recalled that *Saro* in no way relaxed the requirement that the error be *obvious.* In dealing with a defendant's failure to object to specific fact findings of the presentence report, we said that factual errors are obvious if "those findings are internally contradictory, wildly implausible, or in direct conflict with the evidence that the sentencing court

heard at trial." *Id.* at 291. Thus, even for sentencing, "obvious" means obvious; the district court is not required to have second sight. It is true that post-*Saro* cases have affirmatively required the sentencing judge to make an individualized finding in one narrow area—the attribution to a defendant of drugs sold by others in a conspiracy. See *United States v. Childress,* 58 F.3d 693, 722–23 (D.C.Cir.1995); see also *United States v. Anderson,* 39 F.3d 331, 352–53 (D.C.Cir. 1994); cf. *United States v. Edmond,* 52 F.3d 1080, 1103–05 (D.C.Cir.1995). But outside that context, where the controlling standards are exceptionally elusive, "obvious" continues to mean obvious.

■ Here, far from obvious error, there was only a very remote possibility of verbal confusion. Although there may previously have been uncertainty whether "cocaine base" for Guidelines purposes included a broader set of drugs than just "crack," the Guidelines were amended to make that limitation clear well before Washington's sentencing. U.S.S.G. § 2D1.1(c), Note D to Drug Quantity Table (Nov.1995); see also U.S.S.G.App. C, Amend. 487 (amendment effective November 1, 1993). Other forms of what is evidently cocaine base chemically, such as coca paste, did not and do not qualify as cocaine base. *Id.* In the absence of a clue to the contrary, it seems reasonable to assume that when the probation officer drafted the report, a document in which the Guidelines are applied to the facts of an individual case, he used the term "cocaine base" in its Guidelines sense. Writers in a trade or subculture typically follow its usages; when a computer manual speaks of "bugs," it does not conjure up mosquitos. Cf. 2 Joseph H. Beale, *The Conflict of Laws* § 346.2, at 1203–04 (1935) (meaning of trade words in contracts generally governed by usage of place of contracting).

Further, because of the very difference in sentencing treatment that Washington asserts caused him prejudice (as applied to these quantities, a difference between offense level 34 and level 24), the consequences of the writer's language was readily apparent—thus giving notice that the phrase cocaine base was meant in its technical, Guidelines

sense. Yet, although Washington responded to the presentence report with a number of objections, nowhere did he raise doubts that he had been dealing in crack. See Memorandum in Aid of Sentencing, No. 94–355–01 (D.D.C. July 25, 1995); Supplemental Memorandum in Aid of Sentencing, No. 94–355–01 (D.D.C. March 18, 1996); Transcript of Sentencing Hearing, No. 94–0355 (D.D.C. April 15, 1996).

Nothing at the plea hearing suggested that the parties used "cocaine base" to mean anything but crack cocaine. Washington pled guilty to the distribution of "five grams or more of cocaine base or crack." Transcript of Sealed Guilty Plea, No. 94–0355, at 5 (D.D.C. Feb. 6, 1995). A few seconds later, if it was not already clear, it became obvious that the judge was using "crack" as a modifier of, ·not as an alternative to, cocaine base. The defendant continued to assent:

> The Court: Now, you know if this case went to trial they would have to prove that you had *this crack* in your possession, that you had the intent, or the purpose, to distribute it, sell it, and that it was five grams or more. As you understand it, they could prove that?
>
> The Defendant: Yes, Your Honor.

*Id.* (emphasis added). The evidence proffered by the government confirmed this. According to the assistant U.S. attorney's representations, Washington sold "four white rock-like substances," *id.* at 8, the form that crack typically takes. See U.S.S.G. § 2D1.1(c), Note D to Drug Quantity Table (Nov.1995). Indeed the government tells us without contradiction from defendant that it knows "of no rock-like form of cocaine base that is not crack." Government's Brief at 16.

The plea colloquy, of course, did not cover Washington's relevant conduct, which was the sole basis for the sentence—given the report's omission of the crack involved in the count to which he pled. But the parties' use of "cocaine base" in the plea colloquy to mean crack supports what one would infer from the Guidelines definition—that the term was being used throughout to cover only the form of cocaine base qualifying as such for Guidelines purposes. Here it is particularly fair to infer that the parties used the same phrase to mean the same drugs, even though referring to illegal acts on different days, as a portion of the drugs counted as relevant conduct was in effect a sample for the substance sold in the plea count. When Washington sold one-quarter ounce to an undercover agent on July 6 (part of the relevant conduct) he told the agent that although he did not have a full ounce at the time, he could supply the rest later, and did so on July 8 (covered by count to which Washington pleaded).

It is, of course, conceivable that there was error here. But if so there was nothing obvious about it. A finding to the contrary would effectively create a duty for district court judges to ferret out, singlehandedly, every possible defect in fact or law in the presentence report. In our system that is what defense counsel is for.

Appellant relies heavily on *United States v. James,* 78 F.3d 851 (3d Cir.1996). There the court remanded for resentencing on the ground that the government had not proved, by a preponderance of the evidence, that the cocaine base at issue was crack. The drugs considered in the sentencing consisted exclusively of the quantities to which defendant had pleaded. At sentencing the defendant raised the legal issue of the scope of "cocaine base" under the Guidelines and evidently also claimed that the drug he had sold was not crack. The court of appeals saw the factual issue as turning on whether the defendant, at the plea colloquy, had waived the claim that he was selling something other than crack, *id.* at 856; it found against waiver because the court and the defendant had spoken solely in terms of cocaine base and had never used the term crack—only the prosecutor had. Thus, not only was the plea colloquy less revealing than here, but the *James* court had no occasion to consider the implications of a presentence report's uncontested use of a technical term clearly defined in the governing rules (the Guidelines). Accordingly, nothing in *James* draws into question our finding that there was no obvious error.

The judgment is

*Affirmed.*