**UNITED STATES of America,**

v.

**Alfred ELI, Defendant.**

No. CRIM.97–0292 (PLF).
No. CIV.A.99–0864 (PLF).

United States District Court, District of Columbia.

Sept. 5, 2002.

Mary Ann Snow, U.S. Attorney's Office, Washington, DC, David A. Howard, Fed. Public Defender for D.C., Washington, DC, for Elfred Eli.

Mary Ann Snow, Robert Daniel Okun, U.S. Attorney's Office, Washington, DC, Barry D. Glickman, U.S. Attorney's Office, Narcotics Div., Washington, DC, for U.S.

## OPINION

PAUL L. FRIEDMAN, District Judge.

Defendant Alfred Eli has filed a motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. He contends that his court appointed counsel was constitutionally ineffective during the plea proceedings and at sentencing in this case. Defendant also has filed two motions raising issues based on the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). After the Court appointed new counsel for Mr. Eli, the parties appeared before the Court for an evidentiary hearing and for argument on defendant's motions. Upon consideration of the arguments raised by the parties in their briefs and at the hearing, the Court grants defendant's Section 2255 motion in part and denies it in part, and denies defendant's two *Apprendi* motions.

## I. BACKGROUND

Defendant Alfred Eli was charged in a three count indictment with unlawful distribution of 50 grams or more of a mixture and substance containing a detectable amount of cocaine base, also known as crack, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii). The charges arose out of three undercover sales of what the government contends was crack cocaine on March 6, 1997 (Count One), March 13, 1997 (Count Two), and April 2, 1997 (Count Three). David Howard, a defense attorney who then was with the Office of the Federal Public Defender for the District of Columbia, represented Mr. Eli at the time of the plea and at sentencing. On December 12, 1997, the defendant entered a plea of guilty to Count One of the indictment pursuant to a written plea agreement. On April 2, 1998, the Court sentenced the defendant on Count One to 121 months in prison followed by a five year period of

supervised release, the defendant having agreed pursuant to the plea agreement that he was accountable for at least 150 grams of cocaine base.[1] The government moved to dismiss the remaining counts of the indictment.

The defendant filed a *pro se* motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. After the Court appointed new counsel to assist him with his motion, Mr. Eli's new attorney then supplemented the Section 2255 motion and filed two motions raising arguments based on the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Defendant contends that his former attorney was constitutionally ineffective because (1) he failed to contest at sentencing that the drugs he admitted selling were in fact crack cocaine within the meaning of the Sentencing Guidelines, and (2) he failed to file a notice of appeal on defendant's behalf. In his first *Apprendi* motion, defendant argues that if the Court orders a re-sentencing in this matter, *Apprendi* requires that at the re-sentencing the government must prove beyond a reasonable doubt that Mr. Eli sold crack cocaine. In his second motion, defendant argues that the Court should hold 21 U.S.C. § 841 unconstitutional based on *Apprendi*.

The parties appeared before the Court for a two-day hearing on defendant's motions. On the first day of the hearing, the Court heard testimony from the defendant, his prior counsel, and three experts (two for defendant, one for the government) on the issue of whether the drugs sold by the defendant were crack cocaine. On the second day, the Court heard argument from both counsel on all of defendant's motions.

## II.  DISCUSSION

### A.  Ineffective Assistance of Counsel

The Sixth Amendment guarantees a defendant in a criminal case the effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court announced the standard that a defendant must meet to prevail on an ineffective assistance of counsel claim:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687, 104 S.Ct. 2052. Under the first part of the test, the defendant must show that counsel fell below an objective standard of reasonableness; under the second part, he must show that the deficient per-

1. According to the Presentence Investigation Report, the sale on March 6, 1997 (Count One) involved 62 grams of crack cocaine, the sale on March 13, 1997 (Count Two) involved 62 grams of cocaine base, and the sale on April 2, 1997 (Count Three) involved 125.4 grams of cocaine base, for a total of 249.4 grams. Under the Federal Sentencing Guidelines, that meant that the defendant was at a base offense level of 34. *See* U.S.S.G. § 2D1.1(c)(3). With a three level downward adjustment for acceptance of responsibility, the defendant was at an offense level 31. *See* U.S.S.G. § 3E1.1. Because of his prior criminal history, he was in Criminal History Category II. His guideline sentencing range therefore was 121 to 151 months.

formance prejudiced the defendant. *See id.* at 688, 104 S.Ct. 2052; *see also United States v. Bruce,* 89 F.3d 886, 892 (D.C.Cir. 1996). The "benchmark" for judging any claim of ineffectiveness is "whether counsel's conduct so undermined the proper functioning of the adversarial process" that there is a question of whether there was "a just result." *Strickland v. Washington,* 466 U.S. at 686, 104 S.Ct. 2052.

██. Because a court must assume that there is a wide range of sound strategy that a constitutionally effective attorney might choose, it is up to the defendant to overcome a presumption that counsel acted reasonably and to demonstrate that the challenged action was not the result of sound strategy. *See Strickland v. Washington,* 466 U.S. at 689–90, 104 S.Ct. 2052. Furthermore, even if counsel's errors are substantial and objectively unreasonable, a defendant still must make an affirmative showing of prejudice. *See id.* at 692–93, 104 S.Ct. 2052. Under the *Strickland* test:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694., 104 S.Ct. 2052

██ In the context of a plea, the Supreme Court has held that a defendant must show: (1) that counsel's advice was not within the range of competence demanded in criminal cases, and (2) that as a result of counsel's advice or conduct the defendant was prejudiced in that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 58–59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). *See United States v. Calderon,* 163 F.3d 644, 646 (D.C.Cir.1999).

### 1. *The Crack Cocaine Issue*

Because the drugs the defendant admittedly sold were of a very low purity and because certain chemicals were found in samples of the drugs sold on March 13, 1997 and April 2, 1997, defendant contends that the drugs should not have been considered crack cocaine for purposes of sentencing. It follows that if they had not been considered crack cocaine, his sentence would have been substantially less than 121 months.[2] The defendant argues that his attorney's failure to raise the issue of the identity of the drugs at sentencing, and to put the government to its burden of proving by a preponderance of the evidence that these drugs were crack cocaine, constitutes ineffective assistance of counsel.[3]

---

2. The Federal Sentencing Guidelines provide that the base offense level for distributing at least 200 grams but less than 300 grams of powder cocaine is 20. The defendant admitted to distributing at least 150 grams, and the Presentence Investigation Report stated that the actual amount was 249.4 grams. With a three level adjustment for acceptance of responsibility, the defendant's total offense level would have been 17 if the drug involved was powder cocaine rather than crack cocaine. *See* U.S.S.G. §§ 2D1.1(c)(12), 3E1.1. At an offense level 17 and a Criminal History Category II, the guideline sentencing range would have been 27 to 30 months.

3. Because the defendant was sentenced on April 2, 1998, well before the Supreme Court issued its decision in *Apprendi,* the standard of proof at sentencing was a preponderance standard. *See* U.S.S.G. § 6A1.3, Commentary; *United States v. Alberto–Genao,* 28 F.Supp.2d 658, 663–64 (D.D.C.1998). Defendant's argument therefore is that his former attorney was constitutionally ineffective for failing to force the government to prove by a preponderance of the evidence at sentencing that the drugs he sold were crack cocaine.

At the hearing on the motion to vacate, set aside or correct his sentence, the defendant made it absolutely clear that he does not and did not ever wish to withdraw his guilty plea. *See* Transcript of May 30, 2001 Hearing ("5/30/01 Tr.") at 4–5, 7. Rather, he wanted only to have preserved his right to argue at sentencing what controlled substance he sold. *See id.* at 22, 24. Thus, even assuming that his prior counsel erred by not raising the "crack cocaine issue," defendant's unequivocal decision not to seek to withdraw his guilty plea means that he cannot show that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. at 58, 106 S.Ct. 366. Mr. Eli therefore cannot satisfy the prejudice prong of the ineffective assistance of counsel test of *Strickland* and *Hill.* Thus, he cannot prevail on his ineffective assistance of counsel claim.

In any event, defendant's argument rests on the flawed premise that the government would ever have entered into a plea agreement with him that would have permitted him to preserve the right to challenge the identity of the drugs. It is inconceivable that had defendant insisted on preserving the "crack cocaine issue" for purposes of sentencing the government would have agreed to a plea at all. Alternatively, if the defendant had gone forward with the plea as actually negotiated and then he or his prior counsel had raised the "crack cocaine issue" at sentencing, the government properly would have viewed Mr. Eli's challenge to the identity of the drugs as a breach of the plea agreement or a matter beyond the Court's authority then to consider because of the terms of the agreement. *See United States v. Williams,* 1999 WL 1212883, at *4–5

(D.D.C. Oct.25, 1999). The most likely scenario therefore is not the one the defendant posits—a plea with the issue of drug identity left for counsel to raise at sentencing—but no plea at all. The government simply would have declined to enter into a plea agreement with the defendant on those terms and there would have been a trial on all counts. The Court therefore cannot conclude that Mr. Howard's actions fell below a reasonable standard of competence demanded in criminal cases because the scenario defendant outlines never could have happened.

Finally, once the Court accepted defendant's guilty plea, it would have been unreasonable for Mr. Howard to raise the issue of the identity of the drugs at sentencing. In a written plea agreement that repeatedly referred to the drugs sold as crack cocaine, Mr. Eli acknowledged that he sold crack cocaine to the undercover officers on three separate occasions. Pursuant to the signed plea agreement, the defendant "agrees to admit guilt and enter a plea of guilty to Count One . . . which charges [him] with Unlawful Distribution of 50 grams or more of Cocaine Base ('crack'). . . . [defendant] agrees and will acknowledge . . . [that he] is accountable for at least 150 grams but less than 500 grams of cocaine base, also known as 'crack' . . . .". *See* Plea Agreement of November 25, 1997 (signed by defendant on December 5, 1997) at 1–2. This written acknowledgment was confirmed at the plea proceedings when the Court asked the defendant at least three times whether he was pleading guilty to unlawful distribution of cocaine base or crack cocaine; each time the defendant, under oath, answered that he was. *See* Transcript of December 12, 1997 Plea Hearing ("12/12/97 Tr.") at 6, 9, 18–20.[4] In the government's oral prof-

---

4. At the plea proceeding, the Court concluded that Mr. Eli was competent to enter a guilty

fer of what its evidence would have been had the matter gone to trial, the prosecutor referred to the drugs sold by Mr. Eli on March 6, 1997, March 13, 1997, and April 2, 1997 as "crack cocaine" seven times—six of those times referring to the drugs as "cocaine base or crack cocaine." *Id.* at 15–18. The defendant—still under oath—concurred with the prosecutor's statement of what he had done and his characterization of what drugs were involved. *See id.* at 18.

Once the defendant pleaded guilty, Mr. Howard's decision not to contest the identity of the drugs at the time of sentencing was not ineffective assistance of counsel but the only reasonable decision he could have reached. The Court concludes that Mr. Howard was not ineffective for failing to raise this issue at sentencing.

Even if the Court were to make the highly dubious assumption that there could have been a plea in this case without the crucial acknowledgment of what drugs were involved, or that the defendant could have raised at sentencing the issue of whether the drugs were crack cocaine without reneging on the plea agreement, the Court still would have found by a preponderance of the evidence that Mr. Eli sold crack cocaine. As the Court already has observed, Mr. Eli signed a written plea agreement in which he admitted that he had distributed crack cocaine on three occasions. *See* Plea Agreement at 1–2. While under oath he acknowledged his guilt with respect to the charge of distribution of cocaine base or crack cocaine numerous times during the plea proceedings, and the transcript of those proceedings refers to crack cocaine again and again. *See supra* 7. On the basis of those representations alone, the Court would have no

difficulty in concluding by a preponderance of the evidence that Mr. Eli distributed crack cocaine.

■ Moreover, the Presentence Investigation Report ("PSI") prepared by the Probation Office stated that on March 6, 1997 the defendant sold to the undercover officer "a clear plastic bag containing a light brown rock-like substance" which later tested positive for cocaine base. PSI at 3. The PSI confirmed that the drugs sold on two subsequent occasions also tested positive for cocaine base. *See id.* at 4. The results of these laboratory tests and the fact that the substance was "rock-like" corroborates the representations in the plea agreement and at the plea proceeding that Mr. Eli sold crack cocaine to the undercover officer. Based on all the evidence that the Court had before it at the time of sentencing, the Court concludes that the government easily proved by a preponderance of the evidence that the drugs sold by Mr. Eli were crack cocaine.

At the evidentiary hearing, the defendant introduced expert testimony—presumably what he contends effective counsel would have done at sentencing—to support his contention that the drugs sold were not crack cocaine. Dr. Morris Zedeck testified that the drugs sold by the defendant on March 13, 1997 contained dimethyltrephalate ("DMT"), a chemical which Dr. Zedeck explained would have acted as an irritant for any person using these drugs. *See* 5/30/01 Tr. at 123–25. In Dr. Zedeck's opinion, the presence of the DMT would have rendered the drugs unusable as crack cocaine. *See id.* at 125. With respect to the drugs sold on April 2, 1997, Dr. Zedeck explained that these drugs contain sodium borate—a substance

plea, *see* 12/12/97 Tr. at 3–4, and was entering a knowing, voluntary and intelligent plea.

*See id.* at 20–21.

he has never seen in a sample of crack cocaine or heard of being present in crack cocaine. *See id.* at 126–29. Finally, with respect to all three samples, Dr. Zedeck testified that the drugs sold were of very low purity—between 36 percent and 44 percent—whereas, in his opinion, crack cocaine is usually between 70 and 90 percent pure. *See id.* at 129–30.

Defendant's second expert, Dr. John Morgan, supported Dr. Zedeck's testimony with respect to the DMT found in the March 13, 1997 sample, *see* 5/30/01 Tr. at 147, the sodium borate found in the April 2, 1997 sample, *see id.* at 147–49, and the purportedly low purity of the drugs sold on all three occasions. *See id.* at 144–46. The defendant contends that on the basis of the testimony of these two experts, the Court should conclude that the drugs sold were not crack cocaine for purposes of sentencing.

The government offered the expert testimony of Steven Demchuk, the DEA chemist who actually performed the laboratory analysis on the drugs sold by Mr. Eli. On the basis of Mr. Demchuk's testimony, the Court rejects the conclusions of defendant's experts and finds that Mr. Eli sold crack cocaine.[5] The Court concludes that the low purity of the drugs sold by Mr. Eli does not mean that the drugs were not crack cocaine. Mr. Demchuk explained that while the purity of the drugs Mr. Eli sold is somewhat lower—36 to 44 percent—than the typical purity of crack cocaine—50 to 60 percent pure—the low purity did not effect his conclusion that the drugs were in fact crack cocaine. *See*

5/30/01 Tr. at 178–80. He explained that in his work as a DEA chemist he has seen samples of crack cocaine with purity levels as low as 20 percent and that even these drugs are considered to be crack cocaine. *See id.* at 186.

The Court also concludes that the presence of sodium borate in the drugs sold on April 2, 1997 does not undermine the conclusion that Mr. Eli sold crack cocaine. The defense experts testified only that they were unaware of sodium borate being used to convert powder cocaine into crack cocaine and not that drugs containing sodium borate could not be crack cocaine. Mr. Demchuk testified that out of the approximately 5800 cocaine samples he has analyzed while employed by the DEA, he personally has found sodium borate in about 20 cocaine samples and in all of those cases the drug was considered to be crack cocaine. *See* 5/30/01 Tr. at 166–67, 172, 180. He also testified that nationally, from 1996 to the date of the hearing, there have been 172 instances of sodium borate detected in samples of cocaine base. *See id.* at 167. Mr. Demchuk further explained that while teaching a DEA forensic class concerning controlled substances, as a demonstration he successfully used sodium borate to convert powder cocaine into crack cocaine on one occasion. *See id.* at 187. He testified that the presence of sodium borate had no effect on his conclusion that Mr. Eli sold crack cocaine on April 2, 1997. *See id.* 166–67, 172, 180. Based on the testimony of Mr. Demchuk and the entire record with respect to this issue, the Court con-

---

**5.** While it does not discredit the testimony of Dr. Zedeck or Dr. Morgan, the Court gives greater weight to the testimony of Mr. Demchuk. Mr. Demchuk's work as a DEA chemist and his first-hand experience in evaluating thousands of drug samples based on actual arrests made by law enforcement officers puts him in a better position to evaluate whether

or not these drugs should be considered crack cocaine for purposes of sentencing. While Dr. Zedeck and Dr. Morgan rely on some first-hand knowledge, their opinions seemed to be based primarily on the academic literature or statistical compilations from data generated from law enforcement agencies such as the DEA.

cludes that Mr. Eli sold crack cocaine on April 2, 1997.

Similarly, the Court rejects defendant's argument that the drugs sold on March 13, 1997 were not crack cocaine because of the presence of the chemical DMT. Although DMT may act as an irritant, the testimony of the defense experts does not support the conclusion that these drugs could not be "used" as crack cocaine—*i.e.*, smoked by a user to introduce the drugs into his body. As Mr. Demchuk testified, while he did not know how the DMT would interact with the cocaine during the smoking process, he believed that the cocaine would "come out" of the mixture. *See* 5/30/01 Tr. at 181. Mr. Demchuk also testified that of the approximately 5800 cocaine samples he has analyzed, he personally has seen DMT in about 50 cocaine samples and the majority have been cocaine base. *See* 5/30/01 Tr. at 167–68. Furthermore, nationwide, DMT has been found in cocaine samples 1211 times since 1996, and of these 1211 instances, 90 percent were cocaine base samples. *See id.* at 167–68. On these facts, Mr. Demchuk concluded that the presence of DMT would not effect his view that the drugs sold by the defendant were crack cocaine. *See id.* at 172. Based on a consideration of all the evidence presented at the hearing and the entire record in this case, the Court concludes that Mr. Eli sold crack cocaine on March 13, 1997.

### 2. *Failure to File a Notice of Appeal*

▇ The defendant contends that he was denied the effective assistance of counsel when his prior counsel, Mr. Howard, failed to file a notice of appeal after the April 2, 1998 sentencing. Mr. Eli testified that after the sentencing proceeding, he spoke with Mr. Howard in the cellblock behind the courtroom and asked him to file a notice of appeal on his behalf. *See* 5/30/01 Tr. at 74. At the hearing, Mr. Eli testified about this conversation as follows:

It was briefly after sentencing. I walked to the back. [Mr. Howard] came behind me. And I knew that this was going to be our last conversation *so I asked him to file an appeal for me* and he said you was happy with your ten years. What's the problem? I said I'm not happy with the ten. *Can I file an appeal?* He said on what grounds? We don't have no merits. And I shook my head and he sat down.

*Id.* at 75 (emphasis added); *see id.* at 80–81. Mr. Eli testified that he had no further conversation with Mr. Howard until at least a month later. *Id.* at 75–76. On cross examination, Mr. Eli acknowledged that prior to the plea and sentencing Mr. Howard explained that he had a right to an appeal and that the Court also informed him of his right to appeal at sentencing. *See id.* at 79–80, 83–84.

Mr. Howard also testified at the hearing on the issue of whether Mr. Eli asked him to file a notice of appeal. He stated that in his pre-plea consultations with Mr. Eli he explained that Mr. Eli had several rights, including a right to appeal. *See* 5/30/01 Tr. at 45. Mr. Howard also testified that he explained to Mr. Eli that it would be more difficult to succeed on appeal once he accepted the terms of a plea agreement. *See id.* at 46–47. Mr. Howard testified that he had no specific recollection of whether or not Mr. Eli asked him to file a notice of appeal, *see id.* at 50, or a specific recollection that he spoke to Mr. Eli immediately after the April 2, 1998 sentencing in the cellblock behind the courtroom. *See id.* at 51, 55. Instead, Mr. Howard attested to his usual practice of going back to the cellblock to speak to a client after sentencing and represented that if asked to do so, he would have filed a notice of appeal for Mr. Eli. *See id.* at 51. Even though he had no specific recollection of whether Mr. Eli asked him to file a

notice of appeal, Mr. Howard agreed that it was his view at the time that there would be no basis upon which Mr. Eli could successfully appeal. *See id.* at 51, 56.

Mr. Howard and Mr. Eli agree that they discussed the right to appeal and that the Court informed Mr. Eli of the right to appeal at the time of sentencing.[6] Mr. Eli therefore knew that he had a right to appeal and that he had to ask Mr. Howard to file a notice of appeal. Furthermore, although Mr. Eli's testimony regarding his conversation with Mr. Howard is vague and self-serving in some respects, Mr. Eli testified unequivocally that he asked Mr. Howard to file a notice of appeal immediately after the sentencing on April 2. By contrast, Mr. Howard has no specific recollection of Mr. Eli's sentencing or whether or not the conversation in the cellblock described by Mr. Eli took place. Mr. Eli's recollection therefore essentially stands unrebutted. On the basis of the record presented, the Court finds that Mr. Eli has proved that he asked his attorney to file a notice of appeal. It is undisputed that no notice of appeal was filed.

The government argues that under *Roe v. Flores–Ortega,* 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000), the Court nevertheless should reject defendant's argument that his lawyer's conduct constitutes ineffective assistance of counsel. *Roe v. Flores–Ortega* would only be relevant, however, if the Court concluded that Mr. Eli did not say anything to Mr. Howard about filing a notice of appeal or if his message to Mr. Howard was unclear. The precise issue before the Court in *Roe* was whether it is ineffective assistance of counsel for a lawyer not to file a notice of appeal when his client has not clearly con-

veyed his wishes in that regard one way or the other. *Id.* at 477, 120 S.Ct. 1029. The Supreme Court reiterated its long-held view in that case, however, that it is "professionally unreasonable" for a lawyer to disregard "specific instructions from the defendant to file a notice of appeal." *Id.* Counsel's failure to file a notice of appeal in such circumstances "cannot be considered a strategic decision . . . . [T]he failure to file [a notice of appeal] reflects inattention to the defendant's wishes" and constitutes ineffective assistance of counsel under *Strickland. See Roe v. Flores–Ortega,* 528 U.S. at 477–78, 120 S.Ct. 1029.

Based on the Court's factual findings in this case, it concludes that Mr. Howard's failure to file a notice of appeal after being asked to do so deprived Mr. Eli of his opportunity to appeal the Court's sentence and that Mr. Howard thus provided ineffective assistance of counsel. *See Roe v. Flores–Ortega,* 528 U.S. at 483–85, 120 S.Ct. 1029. The Court therefore grants defendant's Section 2255 motion on this basis.

### B. *Apprendi Motions*

■ In the motion captioned "Motion Requesting Application to 'Crack' Issue of Reasonable Doubt Standard Required by Supreme Court's *Apprendi* Decision," the defendant argues that if there is a resentencing in this case, the government must prove beyond a reasonable doubt—and the Court must find beyond a reasonable doubt—that Mr. Eli sold crack cocaine. Since the Court will have to resentence Mr. Eli because of his attorney's failure to file a notice of appeal, this *Apprendi* argument must be addressed.

In *Apprendi,* the Supreme Court held that "[o]ther than the fact of a prior con-

---

**6.** The Court specifically advised the defendant at sentencing that if he wanted to appeal he had to do so within ten days: "Mr. Howard will file a notice of appeal for you within ten days if you want him to." Transcript of April 2, 1998 Sentencing at 14–15.

viction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey,* 530 U.S. at 490, 120 S.Ct. 2348. This language does not support defendant's view that the Court must decide beyond a reasonable doubt that the drugs sold were crack cocaine.[7] The better reading of *Apprendi* is that if this fact—the identity of the drugs sold—would increase Mr. Eli's punishment beyond the statutory maximum, the question of drug identity then would have to be decided by a jury beyond a reasonable doubt and not by the Court. "*Apprendi* holds that the due process clauses of the fifth and fourteenth amendments make the jury the right decisionmaker ..., and the reasonable doubt standard the proper burden, when a fact raises the maximum lawful punishment." *United States v. Singleton,* 177 F.Supp.2d 31, 35 (D.D.C.2001) (quoting *United States v. Brough,* 243 F.3d 1078, 1079 (7th Cir.2001)). By pleading guilty, the defendant expressly waived his right to a jury trial and thereby forfeited his right to have a jury decide *any* issue, including the nature of the drugs involved, beyond a reasonable doubt.[8]

Even if one might posit a scenario under which the government at sentencing after a plea would have to convince the sentencing judge (as opposed to a jury at trial) beyond a reasonable doubt that the substance a defendant sold was crack cocaine, *Apprendi* is not implicated in this case. The reason is simple: Mr. Eli received a sentence of 121 months under the sentencing guidelines (one month over ten years), which is less than the 20 year

statutory maximum he could have received even if the substance involved were powder cocaine. *See* 21 U.S.C. § 841(b)(1)(C).[9] Thus, a finding by the Court that Mr. Eli sold crack cocaine rather than powder cocaine would be of no consequence under *Apprendi* because such a finding would not increase his sentence beyond the applicable statutory maximum for powder. *See Apprendi v. New Jersey,* 530 U.S. at 490, 120 S.Ct. 2348. As the D.C. Circuit expressly has held, when a defendant's actual sentence does not exceed the statutory maximum, there can be no cognizable *Apprendi* violation. *See United States v. Agramonte,* 276 F.3d 594, 597 (D.C.Cir. 2001); *see also United States v. Singleton,* 177 F.Supp.2d at 36–37.

The fact that the Guideline sentencing range for powder and crack are different is irrelevant under *Apprendi;* only a difference in the statutory maximums would trigger the *Apprendi* right to a finding of the fact of drug type beyond a reasonable doubt. *Apprendi* simply "does not apply to offense characteristics that enhance a defendant's sentence under the Sentencing Guidelines, but ... do not increase the statutory maximum for the offense of conviction." *United States v. Samuel,* 296 F.3d 1169, 1172 (D.C.Cir. 2002). *See also Harris v. United States,* —— U.S. ——, ——, 122 S.Ct. 2406, 2418–20, 153 L.Ed.2d 524 (2002); *United States v. Webb,* 255 F.3d 890, 896 (D.C.Cir.2001); *United States v. Fields,* 251 F.3d 1041, 1046 (D.C.Cir.2001). So long as the sentence imposed by operation of the Guidelines is within the statutory maximum—in this case 20 years—there is no violation of

---

7. The Court already has made that finding by a preponderance of the evidence. *See supra* at 96.

8. *See* 12/12/97 Tr. at 4–5, 13.

9. Even if the Court had imposed the maximum sentence available under the Guidelines, 151 months, *see* note 1 *supra,* the sentence still would have been below the statutory maximum of 20 years for powder cocaine.

*Apprendi.* Furthermore, while there is a statutory ten-year mandatory minimum sentence required for the amount of crack cocaine involved here and no mandatory minimum for the same amount of powder, facts that·trigger statutory mandatory minimums—as opposed to statutory maximums—are not subject to *Apprendi. See McMillan v. Pennsylvania,* 477 U.S. 79, 81, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986); *United States v. Agramonte,* 276 F.3d at 597–98.[10]

Finally, even if the Court had to decide the issue of drug identity beyond a reasonable doubt, it would have no trouble doing so in this case. Based on the review of the written plea agreement and the plea proceedings, *see supra* at 7–8, the laboratory analysis described in the Presentence Investigation Report, *see supra* at 8–9, and the expert testimony presented by both sides and the respective weight the Court has given each side's experts, *see supra* at 9–12, the Court concludes beyond a reasonable doubt that Mr. Eli sold crack cocaine in a total amount of 249.4 grams to the undercover officers on the three dates in question. While it appears that the drugs sold by Mr. Eli were of poor quality, the quality of the drugs does not change the Court's conclusion that the drugs sold were in fact crack cocaine.

In defendant's second *Apprendi* motion, he argues that 21 U.S.C. § 841 must be declared unconstitutional in light of the Supreme Court's decision in *Apprendi.* He relies on the panel decision in *United States v. Buckland,* 259 F.3d 1157 (9th Cir.2001), in which the Ninth Circuit initially held that Section 841 is unconstitu-

tional·under *Apprendi.* The panel decision in *Buckland,* however, was reversed on rehearing *en banc* in *United States v. Buckland,* 289 F.3d 558 (9th Cir.2002) (*en banc* ). Furthermore, this Court, in *United States v. Singleton,* 177 F.Supp.2d at 33–35, already has considered and rejected the *Apprendi* argument that Section 841 is unconstitutional. For the reasons stated in *Singleton,* the Court rejects Mr. Eli's argument in this case.

A separate Order consistent with this Opinion will issue this same day.

SO ORDERED.

### *ORDER*

.Upon consideration of the arguments presented by the parties in the briefs and at the two-day hearing before the Court, and for the reasons stated in the Court's Opinion issued this same day, it is hereby

ORDERED that the defendant's *pro se* motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 and his supplemental Section 2255 motion is GRANTED in part and DENIED in part; it is

FURTHER ORDERED that the defendant's motion requesting the application to the "crack" issue of the reasonable doubt standard under the Supreme Court's *Apprendi* decision is DENIED; it is

FURTHER ORDERED that the defendant's motion requesting a declaration that 21 U.S.C. § 841 is unconstitutional under the Supreme Court's *Apprendi* decision is DENIED; it is

FURTHER ORDERED that the defendant's Section 2255 motion and supplemen-

---

**10.** The Supreme Court recently reaffirmed the continuing vitality of *McMillian. See Harris v. United States,* —— U.S. at ——, 122 S.Ct. at 2414–20, 153 L.Ed.2d 524. Although the portion of Justice Kennedy's plurality opinion in *Harris* concluding that *McMillan* remains good law was joined only by three other jus-

tices, *see id.* at 2414–20, Justice Breyer explained in his concurring opinion that he did not join Justice Kennedy's opinion only because he does not agree with the holding in *Apprendi* and not because he believes that *McMillan* is no longer good law. *See id.* at 2420–22 (Breyer, J., concurring).

tal Section 2255 motion are GRANTED with respect to the issue of whether defendant's attorney was ineffective in failing to file a notice of appeal; and it is

FURTHER ORDERED that the defendant's sentence is VACATED. A resentencing hearing will be held on October 30, 2002 at 2:00 p.m. at which time the Court will resentence the defendant. The defendant and his counsel should be present. *See* Rule 43(a), (c)(4), Fed.R.Crim.P. (requiring. that a defendant be present at resentencing unless the resentencing is a correction or reduction in the sentence); *United States v. Lastra*, 973 F.2d 952, 956 (D.C.Cir.1992).[11] The government is directed to take all necessary steps to insure that Mr. Eli is present in Court on October 30, 2002 at 2:00 p.m.

SO ORDERED.

---

**11.** Under Rule 35(c) of the Federal Rules of Criminal Procedure, the Court may correct a sentence only if it acts within 7 days after the sentence is imposed and only for "arithmetical, technical, or other clear error." The resentencing in this matter cannot be considered a correction, and the defendant therefore must be present.