Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued February 9, 2004      Decided August 20, 2004

No. 02-3102

UNITED STATES OF AMERICA,
APPELLEE

v.

ALFRED ELI, *A/K/A* BEGOD,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 97cr00292–01)

———

*James M. Johnstone*, appointed by the court, argued the cause and filed the briefs for appellant.

*Valinda Jones*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Roscoe C. Howard, Jr.*, U.S. Attorney, and *John R. Fisher* and *Mary A. Snow*,

---

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Assistant U.S. Attorneys. *Mary B. McCord*, Assistant U.S. Attorney, entered an appearance.

Before: EDWARDS, GARLAND, and ROBERTS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: Alfred Eli, who is serving a 121-month prison sentence, contends that his counsel was ineffective in failing to argue that the substance he distributed was not "crack cocaine," but rather a form of cocaine for which a lower sentence should have been imposed. Because we affirm the district court's finding that Eli did, in fact, distribute crack cocaine, we conclude that he suffered no prejudice as a result of his counsel's alleged failure.

I

On July 17, 1997, a federal grand jury issued a three-count indictment charging Eli with violating 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii) by distributing 50 grams or more of "a mixture and substance containing a detectable amount of cocaine base, also known as crack," to an undercover police officer on three separate occasions: March 6, 1997 (Count One); March 13, 1997 (Count Two); and April 2, 1997 (Count Three).[1] On December 12, 1997, Eli entered a plea of guilty to Count One of the indictment pursuant to a written plea agreement. Under the agreement, Eli conceded, inter alia, that he: (1) distributed more than 50 grams of "Cocaine Base ('crack'), in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(A)(iii)"; (2) was accountable "for at least 150 but less than 500 grams of cocaine base, also known as 'crack'" for purposes of the United States Sentencing Guidelines; and (3) was subject to a "possible penalty of not less than ten years" in prison. Plea Agreement ¶¶ 1, 2 (Dec. 12, 1997). In

---

[1] According to the Presentence Investigation Report (PSR), Eli's March 6th and 13th sales each involved approximately 62 grams of cocaine base, and his April 2nd sale involved 125.4 grams of cocaine base. *See* PSR ¶ 3.

return, the government agreed to dismiss the indictment's two remaining counts and not to oppose Eli's request for a 3-level reduction in his guidelines offense level for acceptance of responsibility.

The district court conducted the plea hearing required by Rule 11 of the Federal Rules of Criminal Procedure and accepted Eli's guilty plea. In the course of the hearing, Eli agreed that: he had read the charges in the indictment with his attorney; he understood those charges; he realized that he faced a mandatory minimum of ten years in prison; and he had, in fact, distributed crack cocaine. Eli assented to the final point several times. *See, e.g.*, 12/12/97 Tr. at 6, 9, 16-20. Based on these admissions, the district court adjudged Eli guilty of "Count One of the indictment charging unlawful distribution of cocaine base, or crack on March 6th, 1997." *Id.* at 21.

The court sentenced Eli on April 2, 1998. It found that Eli's offense — distributing "between 150 and 500 grams of crack cocaine" — corresponded to a guidelines offense level of 34. 4/2/98 Tr. at 9; *see* U.S.S.G. § 2D1.1(c)(3) (drug quantity table) (1997). The court decreased that offense level by 3 because Eli had accepted responsibility for his crime by pleading guilty, resulting in an adjusted offense level of 31. *See* U.S.S.G. § 3E1.1(a)-(b). Combined with Eli's criminal history category of II, this adjusted offense level yielded a guidelines sentencing range of 121-151 months in prison. *See* U.S.S.G. ch. 5, pt. A (sentencing table). The court then sentenced Eli to 121 months' incarceration — the bottom of the guidelines range and just one month more than the plea agreement had identified as the statutory minimum for the offense. Plea Agreement ¶ 1; *see* 21 U.S.C. § 841(b)(1)(A)(iii). Although the court advised Eli of his right to appeal, neither Eli nor his counsel filed a notice of appeal within the 10-day period fixed by Federal Rule of Appellate Procedure 4(b)(1)(A).

A year later, on April 5, 1999, Eli filed a pro se motion to vacate, set aside, or correct his sentence, pursuant to 28

U.S.C. § 2255, on the ground that his defense counsel had been constitutionally ineffective. The district court appointed an attorney to represent Eli, who supplemented Eli's initial motion and filed two additional motions. As supplemented, Eli's motion charged that his original counsel had been ineffective by failing to note a timely appeal from his conviction, by failing to advise Eli that there was an issue regarding whether the substance he sold was "crack cocaine" within the meaning of the Sentencing Guidelines, and by failing to contest drug identity at sentencing. The additional motions, based on the Supreme Court's opinion in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), contended that: (1) if the court were to order a resentencing, the government should be required to prove that Eli sold crack cocaine beyond a reasonable doubt; and (2) the statute under which Eli was sentenced, 21 U.S.C. § 841, is unconstitutional.[2]

Following an evidentiary hearing conducted on May 30 and 31, 2001, the district court granted Eli's § 2255 motion with respect to his counsel's failure to file a timely notice of appeal, but denied all of Eli's other claims. *See United States v. Eli*, 227 F. Supp. 2d 90 (D.D.C. 2002). In particular, the court found, "beyond a reasonable doubt," that Eli distributed "crack cocaine." *Id.* at 101. Pursuant to 28 U.S.C. § 2253, the court issued a certificate of appealability with respect to the denied claims, and Eli filed a timely notice of appeal.[3]

---

[2] In *Apprendi*, the Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490.

[3] In light of its decision to grant Eli's § 2255 motion with respect to counsel's failure to file an appeal, and in order to give Eli an opportunity to appeal anew, on October 31, 2002, the district court resentenced Eli to the same sentence he had received in 1998. Although Eli noted an appeal both from the resentencing and from the denial of his § 2255 motion, his briefs address only the latter.

## II

In this court, Eli seeks reversal of the district court's denial of his claims that his original counsel was constitutionally ineffective because: "(1) he advised defendant to plead guilty to one count of the indictment without advising him that 'cocaine base' and 'crack' were not the same thing or that the government had to prove that the substance was 'crack,' and (2) [he] made no attempt to raise this issue" at sentencing. Appellant's Br. at 6. Notwithstanding the first claim of ineffective assistance, however, Eli most emphatically does *not* want his plea vacated.[4] To the contrary, the only prejudice he asserts is the length of his sentence, and the only relief he seeks is a lower sentence to reflect the fact that the substance he distributed was not "crack." *Id*. at 25.[5]

---

[4] *See* Oral Arg. Tape at 2:50, 3:21, 3:51 (D.C. Cir. Feb. 9, 2004); *Eli*, 227 F. Supp. 2d at 95 ("At the hearing on the motion . . . the defendant made it absolutely clear that he does not and did not ever wish to withdraw his guilty plea." (citing 5/30/01 Tr. at 4-5, 7)); Mot. to Vacate, Set Aside, or Correct Sentence at 19 (Apr. 5, 1999). The government attributes Eli's position to the fact that, as a result of the plea, he received a 3-level reduction in his offense level for acceptance of responsibility, which translates into a sentence reduction of at least 47 months.

[5] A footnote to Eli's brief mentions two other arguments that he concedes "are not viable in this Court," but that he wishes to "preserve . . . for possible Supreme Court review." Appellant's Br. at 25 n.11. The first is his contention that *Apprendi* requires that a sentencing court find beyond a reasonable doubt — even at a sentencing pursuant to a plea — that the substance involved in the offense was crack. Even if that claim were correct, *but see United States v. Leachman*, 309 F.3d 377, 384 (6th Cir. 2002) (holding that by pleading guilty, a defendant forfeits "his right to a jury . . . and his right to have every element of his offense proven beyond a reasonable doubt") (internal citation omitted), it is moot in light of the district court's "beyond a reasonable doubt" finding, 227 F. Supp. 2d at 101, which we conclude was not clearly erroneous. Eli's second contention is that *Apprendi* renders 21 U.S.C. § 841 facially unconstitutional. Eli offers no argument, but merely cites the decision of a Ninth Circuit panel that was later overruled by the en

We consider ineffective assistance of counsel claims pursuant to the two-pronged test enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984). "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." 466 U.S. at 687. The latter prong requires the defendant to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694; *see Glover v. United States*, 531 U.S. 198, 200 (2001) (holding that "if an increased prison term did flow from an error the petitioner has established *Strickland* prejudice"). As both parties agree, we review the factual findings that underpin a district court's legal conclusions regarding ineffective assistance only for clear error. *See United States v. Taylor*, 339 F.3d 973, 978 (D.C. Cir. 2003); *United States v. Askew*, 88 F.3d 1065, 1070 (D.C. Cir. 1996).

Although the government raises a multitude of arguments in opposition to Eli's claim of ineffective assistance, the district court has thoughtfully provided a simple and direct route to resolving this appeal. After an evidentiary hearing, the court found that the substance Eli distributed was in fact "crack cocaine." 227 F. Supp. 2d at 101. If that finding survives review, Eli cannot satisfy the *Strickland* test because, even if his counsel's performance were deficient (a point we do not address), Eli cannot show that he was prejudiced in the manner he contends. We therefore proceed directly to the question of the substance's identity.

banc court. *See United States v. Buckland*, 259 F.3d 1157 (9th Cir. 2001), *rev'd en banc*, 289 F.3d 558 (9th Cir. 2002). Every circuit that has considered this contention has rejected it, *see United States v. Outen*, 286 F.3d 622, 634 (2d Cir. 2002) (collecting cases), and this circuit has continued to uphold § 841 convictions post-*Apprendi*, *see, e.g.*, *United States v. Gibson*, 353 F.3d 21, 28 (D.C. Cir. 2003). Nothing in the cited panel decision persuades us to do otherwise here.

III

A

Under the Sentencing Guidelines, the sentencing range for a defendant convicted of a narcotics offense depends upon the amount and identity of the drug he distributed during the offense charged in the count of conviction, as well as in the course of related conduct. *See* U.S.S.G. § 2D1.1(a)(3) (base offense level); *id.* § 2D1.1(c) (drug quantity table). Eli concedes that he is accountable for the distribution of approximately 250 grams of a mixture or substance containing "cocaine base." Since 1993, however, the guidelines have distinguished between the broader term "cocaine base" and the form of cocaine base known as "crack." *See id.* § 2D1.1(c), Note (D). For someone with Eli's criminal history who accepts responsibility for his conduct, the guidelines sentencing range for distributing 250 grams of "crack" is 121-151 months — the range that the court applied to Eli and that led to his 121-month sentence. The corresponding range for 250 grams of cocaine base not in the form of crack is 27-33 months — the same range applicable to powder cocaine (cocaine hydrochloride).

The guidelines sentencing ranges are also driven, in substantial part, by the mandatory minimum sentencing provisions of 21 U.S.C. § 841(b)(1). Subsection 841(b)(1)(A)(iii) imposes a mandatory minimum 10-year sentence for a violation involving "50 grams or more" of a mixture or substance "which contains cocaine base." If the drug is a form of cocaine not within the statutory meaning of "cocaine base," there is no mandatory minimum at all unless at least 500 grams are involved. *See* 21 U.S.C. § 841(b)(1)(B)(ii); *see also id.* § 841(b)(1)(A)(ii). Eli's total was only 249.4 grams.

A 1993 amendment to the Sentencing Guidelines, incorporated in Note (D) to the Drug Quantity Table, provides the following definition:

"Cocaine base," for purposes of this guideline, means "crack." "Crack" is the street name for a form of cocaine base, usually prepared by processing cocaine

hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form.

U.S.S.G. § 2D1.1(c), Note (D). The Sentencing Commission explained the reason for the amendment as follows:

This amendment provides that, for purposes of the guidelines, "cocaine base" means "crack." ... Under this amendment, forms of cocaine base other than crack (*e.g.*, coca paste, an intermediate step in the processing of coca leaves into cocaine hydrochloride, scientifically is a base form of cocaine, but it is not crack) will be treated as cocaine.

U.S.S.G. App. C, Amend. 487; *see United States v. Washington*, 115 F.3d 1008, 1010-11 (D.C. Cir. 1997) (noting that, for guidelines purposes, "cocaine base" means "crack").

At the time this appeal was argued, this court had not yet addressed whether the statutory term "cocaine base," which designates the drug subject to the 10-year mandatory minimum provision of § 841(b)(1)(A)(iii), has the same meaning that the Sentencing Guidelines ascribe to the term: i.e., that " 'cocaine base' means 'crack,' " U.S.S.G. § 2D1.1(c), Note (D). Subsequent to oral argument, however, another panel of this court addressed and partially resolved the question. In *United States v. Brisbane*, the court first rejected the possibility that, for purposes of the statute, " 'cocaine base' ... include[s] all base forms of cocaine." 367 F.3d 910, 913 (D.C. Cir. 2004). It then identified "two other options":

First, "cocaine base" could mean only crack[,].... the only form of cocaine that is both smokable and widely available.... The second option is that "cocaine base" means any cocaine that is smokable.... In addition to crack, [this] includes in the definition "traditional" freebase cocaine and cocaine paste.

*Id.* at 914. In the end, the *Brisbane* court concluded that it "need not choose between the[se] two options," because "the government did not prove that the substance distributed was smokable and it did not prove that it was crack." *Id.* The

parties have filed supplemental submissions concerning *Brisbane*'s applicability to Eli's appeal.

B

There may be cases in which it will be difficult to determine whether a particular batch of "cocaine base" falls within the definition of that term as it is used in the Sentencing Guidelines and/or the 10-year mandatory minimum provision of § 841(b)(1)(A)(iii). But this is not such a case, thanks in large part to the diligent district judge who, after conducting an extensive evidentiary hearing, made findings that "covered all the bases" — so to speak. Following that hearing, the judge found that Eli had distributed "crack cocaine." *Eli*, 227 F. Supp. 2d at 101. That finding places Eli squarely within the enhanced sentencing provisions of both the guidelines and the statute.

The district court's determination relied upon, and was well supported by, the evidence produced at the hearing.[6] First, the government chemist testified, and Eli did not dispute, that Eli's drugs tested positive for cocaine base. *See* PSR ¶ 3. Second, both the Drug Enforcement Agency's (DEA's) lab report and the U.S. Probation Office's Presentence Investigation Report (to which Eli acceded) stated that the drugs recovered in the sales were "rock-like." 227 F. Supp. 2d at 96 (citing PSR ¶ 3); *see* DEA Form 7 (3/7/97); *id.* (3/14/97); *id.* (4/3/97). Third, the chemist indicated that the drugs were smokable. *See* 5/30/01 Tr. at 187. Finally, he concluded that the drugs were properly identified as crack cocaine. *Id.* at 179, 180. Whatever distinctions there may be in the various definitions of "cocaine base," this evidence suffices to support

---

[6] To the extent there were disputes among the parties' experts, the district court gave "greater weight to the testimony" of the government's expert, who, unlike Eli's experts, had "first-hand experience in evaluating thousands of drug samples." *Eli*, 227 F. Supp. 2d at 97 n.5. We see nothing unreasonable or clearly erroneous in that determination.

the conclusion that the substance Eli sold was "crack."[7]

Eli contests this conclusion on three grounds. First, he notes that lab tests showed that the drugs were relatively impure — between 36 and 44 percent cocaine base — and asserts that crack cocaine is usually 70-90 percent cocaine base. But the district court concluded that the low purity did not disqualify the drugs as crack, relying on the chemist's testimony that, while the purity was somewhat lower than the typical purity of 50-60 percent, he had tested crack of substantially lower purity. *Eli*, 227 F. Supp. 2d at 97 (citing 5/30/01 Tr. at 178-80, 186). We see no error in that determination. *Cf.* U.S. Sentencing Commission, COCAINE AND FEDERAL SENTENCING POLICY 17 (2002) (noting that the "processes used by some crack cocaine manufacturers . . . introduce

---

[7] Eli claims that an additional element of the definition of crack is proof that the substance would "pass[ ] for 'crack'" on the street. Appellant's Br. at 19. Even if that were correct (a point we do not decide), this requirement was satisfied by Eli's repeated acknowledgment — both in his written plea agreement and during the Rule 11 plea hearing and colloquy — that the substance was "crack," and by the fact that Eli sold the drugs as "crack" to an undercover officer he thought was a street purchaser. *See Eli*, 227 F. Supp. 2d at 95-96. In light of the strength of the government's other evidence, we need not decide whether Eli's statements also completely waive his claim that the substance did not meet the legal definition of "crack." Eli maintains that the statements cannot be given that effect because his counsel did not advise him of the legal distinctions among the forms of cocaine base, and hence the statements were not "knowing and intelligent." *Compare United States v. Stafford*, 258 F.3d 465, 472-74 (6th Cir. 2001) (relying on a defendant's statements at a plea hearing to conclude that the drug involved was crack cocaine), *with United States v. Garrett*, 189 F.3d 610, 612 (7th Cir. 1999) (vacating a sentence where the record did "not demonstrate adequately that [the defendant's] admission was knowing and therefore capable of establishing that the drug involved was crack rather than another form of cocaine base"); *cf. Washington*, 115 F.3d at 1010-11 (finding no plain error in the district court's determination that the distributed drug was crack cocaine, where both the PSR and the defendant at the plea hearing referred to it as such).

impurities resulting in a product less pure than the powder cocaine from which it was derived").

Second, Eli notes that at least one of the samples contained traces of dimethyltrephalate (DMT), and argues that the sample cannot be classified as crack because the DMT would render it unsmokable. According to Eli's experts, DMT emits fumes that would irritate a user's eyes and respiratory tract. The district court, however, found that the presence of DMT did "not support the conclusion that these drugs could not be 'used' as crack cocaine — *i.e.*, smoked by a user to introduce the drugs into his body." 227 F. Supp. 2d at 98. It made that finding based on testimony by the government chemist indicating that the substance would still be smokable because cocaine base has a lower melting point than DMT, and hence when burned would " 'come out' of the mixture" first. *Id.* (quoting 5/30/01 Tr. at 181); *see* 5/30/01 Tr. at 173-74.[8] Although Eli rejects this testimony on the ground that the chemist did not attempt to smoke the substance himself, we can hardly insist that a government chemist smoke a drug sample in order to certify its identity.

Finally, Eli argues that, because lab tests showed that the April 2nd sample contained traces of sodium borate, that sample did not satisfy the definition of crack. The district court concluded that the presence of sodium borate did not undermine the conclusion that the substance was crack, in light of the chemist's testimony that he: (1) had successfully used sodium borate rather than sodium bicarbonate to convert powder cocaine into crack in a laboratory setting; (2) had personally found sodium borate in other crack samples; and (3) was aware that sodium borate had been detected in crack samples by other chemists nationwide. 227 F. Supp. 2d at 97 (citing 5/30/01 Tr. at 166-67, 172, 180-81, 187). The

---

[8] The court also noted the chemist's testimony that "DMT has been found in cocaine samples 1211 times since 1966, and of these 1211 instances, 90 percent were cocaine base samples." *Eli*, 227 F. Supp. 2d at 98 (citing 5/30/01 Tr. at 167-68).

court's conclusion was reasonable. The Sentencing Guidelines do not insist that crack can be made only with sodium bicarbonate; they merely state that it is "usually prepared" that way. U.S.S.G. § 2D1.1(c), Note (D). Nor did *Brisbane* exclude the possibility that crack could be made using a compound other than sodium bicarbonate. *See* 367 F.3d at 914.

In sum, the district court's finding that Eli distributed "crack cocaine" — a term that, as used here, satisfies the definition of "cocaine base" adopted by both the Sentencing Guidelines and *Brisbane* for purposes of enhanced sentencing — is well supported and not clearly erroneous. Hence, even if Eli's counsel had advised him of that definition and raised the issue during the April 2, 1998, sentencing,[9] it would have made no difference in Eli's sentence.[10] Accordingly, because there is no "reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different," Eli cannot show that his counsel was constitutionally ineffective under the second prong of the *Strickland* test. 466 U.S. at 694.

---

[9] For the sake of argument, we have assumed that, if Eli's counsel had challenged the drugs' identity at sentencing, the district court would have permitted the proceeding to go forward under the existing plea agreement. As the court recognized, however, under those circumstances the government "would have viewed Mr. Eli's challenge to the identity of the drugs as a breach of the plea agreement or a matter beyond the Court's authority then to consider because of the terms of the [plea] agreement." *Eli*, 227 F. Supp. 2d at 95.

[10] We note again that the only prejudice Eli alleges he has suffered is an inappropriately high sentence, and that he does not seek to withdraw his guilty plea. *See supra* note 4; *cf. Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (holding that to challenge a guilty plea based on ineffective assistance of counsel, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial").

13

## IV

For the foregoing reasons, the judgment of the district court is

*Affirmed.*